## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MERRILL LYNCH, PIERCE, FENNER     :
& SMITH INCORPORATED,     :
International Square     :
1850 K Street, N.W., Suite 700     :
Washington, D.C.  20006     :
    :
        Plaintiff,     :
    :
      v.     :     Civil Action: _____
    :
JINESH BRAHMBHATT,     :
11210 Marwood Hill Drive     :
Potomac, MD  20854     :
    :
and     :
    :
DARSHAN MAKIM     :
2801 Quebec Street NW     :
Apt.  403-N     :
Washington, D.C. 20008     :
    :
        Defendants.     :
    :

## COMPLAINT

Merrill Lynch, Pierce, Fenner & Smith Incorporated, by and through its undersigned attorneys, hereby brings the following Complaint for injunctive relief against Defendants Jinesh Brahmbhatt and Darshan Makim for (i) breach of contract; (ii) misappropriation and misuse of trade secrets; (iii) conversion of confidential business information; (iv) breach of duty of loyalty; and (v) unfair competition; and in support thereof avers as follows:

### I. PARTIES

1.     Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is a Delaware corporation maintaining its principal place of business at the World Financial

Center, North Tower, New York, New York and transacting business in this judicial district through a branch office located in the District of Columbia. Merrill Lynch is a citizen of the States of Delaware and New York.

2.    Defendant Jinesh Brahmbhatt ("Brahmbhatt") is a former Financial Advisor of Merrill Lynch's Washington, D.C. office. Brahmbhatt is a citizen of Maryland residing at 11210 Marwood Hill Drive, Potomac, MD 20854.

3.    Defendant Darshan Makim ("Makim") is a former Financial Advisor of Merrill Lynch's Washington, D.C. office. Makim is a citizen of the District of Columbia residing at 2801 Quebec Street, N.W., Apt. 403, Washington, D.C. 20008.

## II.    JURISDICTION AND VENUE

4.    Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a).

5.    Venue is proper in this judicial district under 28 U.S.C. § 1391(a), inter alia, because Defendant Makim resides in this judicial district and a substantial part of the events complained of herein arose in this judicial district.

## III.    FACTS

6.    Merrill Lynch is engaged in the business of, inter alia, providing financial services.

7.    Defendant Brahmbhatt commenced his employment with Merrill Lynch on or about February 13, 1995.

8.    Defendant Makim commenced his employment with Merrill Lynch on or about October 3, 2005.

9.    As a specific condition of their employment with Merrill Lynch, Brahmbhatt and Makim each executed an employment Agreement. Copies of Brahmbhatt's and Makim's Agreement are attached hereto as Exhibits "**A**" and "**B**", respectively.

10.    In each Agreement, Brahmbhatt and Makim agreed as follows:

> 1.    **All records, whether in original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including** names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), **are confidential and are the sole and exclusive property of Merrill Lynch.** This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.
>
> This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside of Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditure of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, **I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.**

2.    If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, **I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity.**  My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a)  to transfer from Merrill Lynch to me or to my new employer, or

(b)  to open a new account with me or with my new employer, or

(c)  to otherwise discontinue its patronage and business relationship with Merrill Lynch.

(Exhibits "A" and "B" at ¶¶ 1-2)(underline in original, bold face added).

11.    In each <u>Agreement</u>, Brahmbhatt and Makim further agreed:

4.    **In the event that I breach any of the covenants of paragraphs 1, 2 or 3,** I agree that Merrill Lynch will be entitled to injunctive relief.  I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo.  Therefore, **I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION ordering:**

(a)    that I immediately return to Merrill Lynch all records, whether original, duplicated, computerized, or in any other form whatsoever, and that I be enjoined and restrained from using all such records;

(b)    that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch in any office and in any capacity and;

(c)    that I be further enjoined and retrained, for a period of one year, from accepting business from any Accounts

4

who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

(Exhibits "**A**" and "**B**" at ¶ 4)(capitalization in original, boldface added).

12.    Finally, in each <u>Agreement</u>, Brahmbhatt and Makim agreed:

2.    I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

(Exhibits "**A**" and "**B**" at ¶ 3).

13.    Also, as a condition of their employment with Merrill Lynch, Brahmbhatt and Makim agreed, on an annual basis, to abide by Merrill Lynch's <u>Compliance Outline for Private Client Financial Advisors</u>, which provides, in pertinent part, as follows:

**Merrill Lynch policy requires the protection of client information. All employees**, consultants and vendors **must**:

• Be aware of the Merrill Lynch client information that her business handles, and ensure that its use is appropriately restricted. This includes:

• Authenticating individuals prior to discussing any client matters.

• Providing access to client information solely on a need-to-know basis.

• Granting non-Merrill Lynch access to client information only upon a client's authorization or when permitted or required by law, and when necessary, pursuant to a written agreement that contains appropriate privacy and confidentiality provisions.

• **Use client information solely for legitimate Merrill Lynch business purposes and**

**consistent with the policies, procedures, client preferences and agreements which govern its use.**

- Secure client information as it is collected, used, stored, shared, transferred, and discarded.

- Report any breach or compromise of client information. All employees, consultants and vendors must handle individual client personal information in accordance with the Merrill Lynch Global Privacy Pledge and the Online Privacy Statement.

See Compliance Outline attestation for Brahmbhatt and Makim, attached hereto as Exhibits "**C**" and "**D**," respectively, and pertinent parts of the Compliance Outline which are attached hereto as Exhibit "**E**" (emphasis added).

14.    In exchange for these conditions of employment and consideration, Merrill Lynch provided Brahmbhatt and Makim the following:

(a)    employment of Brahmbhatt and Makim in a sales capacity for a sales position;

(b)    payment to Brahmbhatt and Makim of a salary and other greater compensation while they were employed in a sales capacity; and

(c)    facilities, benefits, and other good and valuable consideration.

15.    Merrill Lynch provided the above consideration to Brahmbhatt and Makim and has satisfied all conditions precedent.

16.    More specifically, Merrill Lynch compensated Brahmbhatt and Makim at all times during their employment with Merrill Lynch, provided them with introductory and continuous on-the-job training throughout their employment with Merrill Lynch, provided them with extensive support services, paid for facilities, computer equipment, market reporting services, and all other business expenses, provided Brahmbhatt and

Makim with abundant sales opportunities, registered Brahmbhatt and Makim with the Financial Industry Regulatory Authority ("FINRA"), NASDAQ, and Washington, D.C. securities commission, and provided them with all Merrill Lynch benefits, systems, resources and support at all times.

17.    In addition to the foregoing, Merrill Lynch provided Brahmbhatt and Makim with office facilities, secretarial services, clearing services, operational systems, product inventory, sales assistants, research, the benefit of Merrill Lynch advertising, goodwill and name recognition, access and use of experts in asset management, tax, estate planning and insurance, and promotional marketing and sales support.

18.    In addition to the foregoing, Merrill Lynch provided Brahmbhatt and Makim with customer accounts, customer referrals, reassignment of former and current Merrill Lynch accounts, customer leads and new accounts generated by Merrill Lynch's national advertising campaign, from local seminars, from mailers, from "walk-in" and "call-in" customers, and from lists purchased and acquired by Merrill Lynch, and access and use of confidential records relating to these accounts.

19.    By virtue of Brahmbhatt's and Makim's training and employment at Merrill Lynch, they gained access to the books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets, net worth, investment histories, and the securities held by these customers in their Merrill Lynch accounts.

20.    As a result of the foregoing, Brahmbhatt and Makim specifically acquired information and records that revealed the names and addresses and confidential

information of Merrill Lynch accounts, representing over **$72 million** in assets under Merrill Lynch management. The accounts serviced by Brahmbhatt and Makim generate over **$789,000** in commission revenues for Merrill Lynch on an annualized basis.

21.     Brahmbhatt resigned, without prior notice, from Merrill Lynch on Thursday, May 22, 2008, and immediately joined LPL Financial Corporation ("LPL"), a competitor securities firm located nearby in Vienna, Virginia.

22.     Makim resigned, without prior notice, from Merrill Lynch on Thursday, May 22, 2008, and immediately joined LPL Financial Corporation (hereinafter referred to collectively as "LPL"), a competitor securities firm located nearby in Vienna, Virginia.

23.     After Brahmbhatt and Makim resigned on May 22, 2008, Merrill Lynch conducted a forensic analysis of their Merrill Lynch assigned workstations which revealed that they downloaded confidential and proprietary information onto removable storage devices, commonly referred to as a thumb drive, over the course of the last month leading up to their resignations. See Affidavit of Gerry Weber attached hereto as Exhibit "**F**."

24.     Additionally, Merrill Lynch has learned that Brahmbhatt and/or Makim are calling Merrill Lynch clients and soliciting them to transfer their accounts to their new firm LPL. Additionally, Brahmbhatt is sending emails to Merrill Lynch clients soliciting them to transfer their accounts to LPL. See Affidavit of Cathy Achter attached hereto as Exhibit "**G**."

25.     Based on the foregoing, Merrill Lynch believes that Brahmbhatt and Makim are converting, to their personal use and gain, the information contained in the records of Merrill Lynch, the property of Merrill Lynch, the names and addresses and

other confidential customer information used to conduct business at Merrill Lynch, the trade secrets of Merrill Lynch, Merrill Lynch marketing and promotional techniques, and the goodwill generated, directly and indirectly, by their association with Merrill Lynch, and are doing so by means of, inter alia, preparing to solicit and/or soliciting the Merrill Lynch clients whose accounts they serviced and whose names became known to them while in the employ of Merrill Lynch, as well as Merrill Lynch customer prospects.

26.    Merrill Lynch alleges that Brahmbhatt and Makim are preparing to engage in and have engaged in, inter alia, the following acts:

(a)  conversion of the information contained in confidential Merrill Lynch business records, specifically including the names, addresses, telephone numbers, and possibly other confidential financial information of the customers they serviced at Merrill Lynch and Merrill Lynch customer prospects whose names became known to them at Merrill Lynch;

(b)  transmitting verbally, in writing, or otherwise to their new employer and/or others clients' names, addresses, and other information contained in the records of Merrill Lynch and described in sub-paragraph (a);

(c)  soliciting and/or preparing to solicit Merrill Lynch's clients to terminate their relationship with Merrill Lynch and transfer their accounts to LPL; and

(d) other such acts contrary to the terms, conditions, and provisions of Brahmbhatt's and Makim's agreements and other Merrill Lynch policies.

## COUNT I
## INJUNCTIVE RELIEF

27.    The averments of Paragraphs 1 through 26 are incorporated by reference herein with the same force and effect as if set forth in full below.

28.    By virtue of the foregoing, Merrill Lynch has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Brahmbhatt and Makim.

29.    Unless Brahmbhatt and Makim are temporarily and preliminarily enjoined from the foregoing conduct, Merrill Lynch will be irreparably harmed by:

a)    disclosure of trade secrets, customer lists, and other confidential information, which are solely the property of Merrill Lynch and its clients;

b)    loss of confidentiality of the information contained in clients' records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c)    loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

d)    present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

30.    Merrill Lynch has no adequate remedy at law.

WHEREFORE, Merrill Lynch respectfully requests that:

A Temporary Restraining Order and/or a Preliminary Injunction Order issue immediately, enjoining Brahmbhatt and Makim, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of LPL, until a hearing and thereafter until further Order of this Court, from:

a)      soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Brahmbhatt and/or Makim served or whose name became known to Brahmbhatt and/or Makim while in the employ of Merrill Lynch for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Brahmbhatt's and Makim's family and relatives, and any customers whom Brahmbhatt and/or Makim served as a representative at their prior employer who became clients of Merrill Lynch within one year after they began employment at Merrill Lynch);

b)      soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whose records or information Brahmbhatt and/or Makim used in violation of paragraphs 1, 2 and 3 of their Agreements. This specifically includes any client whom Brahmbhatt and/or Makim may have contacted by mail, phone or otherwise through the use of any information obtained by Brahmbhatt and/or Makim while in the employ of Merrill Lynch (excluding Brahmbhatt's and/or Makim's family and relatives, and any customers whom Brahmbhatt and/or

Makim served as a representative at their prior employer who became clients of Merrill Lynch within one year after they began employment at Merrill Lynch);

c)      using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

d)      destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Brahmbhatt's and/or Makim's possession or control which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch clients whom Brahmbhatt and/or Makim served or whose names became known to Brahmbhatt and/or Makim while employed by Merrill Lynch, or which relate to any of the events alleged in the Complaint in this action; and

e)      any and all other such acts as this Court deems appropriate for injunctive relief.

## COUNT II
## BREACH OF CONTRACT

31.    The allegations of Paragraphs 1 through 30 are incorporated herein by reference with the same force and effect as if set forth in full below.

32.    Upon information and belief, Brahmbhatt and Makim have violated and will continue to violate, inter alia, paragraphs 1, 2 and 3 of their Agreements attached hereto as Exhibits "**A**" and "**B**".  Brahmbhatt and Makim have also violated and are continuing to violate Merrill Lynch policies to which they agreed in writing to abide.  See Exhibits "**C**" and "**D**".

33.    As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

### COUNT III
### MISAPPROPRIATION OF TRADE SECRETS
### (D.C. Code §§ 36-401 et seq.)

34.    The allegations of Paragraphs 1 through 33 are incorporated herein by reference with the same force and effect as if set forth in full below.

35.    The books and records of Merrill Lynch, the confidential information contained therein, including customers' financial statements, investment objectives, assets and/or securities held by these customers in their Merrill Lynch accounts and other financial information, are trade secrets of Merrill Lynch subject to protection under The District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401, et seq.

36.    This information derives independent economic value by not being accessible, through proper means, to competitors, which can profit from its use or disclosure.

37.    Merrill Lynch has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including by having Defendants and other employees sign the Agreements and additional agreements prohibiting the use and disclosure of such information outside of Merrill Lynch.

38.    The foregoing conduct of Defendants constitutes a willful and malicious misappropriation and misuse of Merrill Lynch's confidential, trade secret information.

39.    As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV
## TORT-CONVERSION

40.    The allegations of Paragraphs 1 through 39 are incorporated herein by reference with the same force and effect as if set forth in full below.

41.    The foregoing conduct of Brahmbhatt and Makim constitutes a conversion of Merrill Lynch's property, and proprietary rights and interests.

42.    As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT V
## BREACH OF DUTY OF LOYALTY

43.    The allegations of Paragraphs 1 through 42 are incorporated herein by reference with the same force and effect as if set forth in full below.

44.    Brahmbhatt and Makim have violated the common law duty of loyalty arising under their Agreements and employment relationships with Merrill Lynch in that, while employed by Merrill Lynch, Brahmbhatt and Makim secretly planned to leave the employ of Merrill Lynch and schemed with others to disclose to a Merrill Lynch competitor the confidential information contained in Merrill Lynch's customer records and to misappropriate Merrill Lynch's trade secrets and confidential business information.

45.    As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

<div align="center">

**COUNT VI**
**UNFAIR COMPETITION**

</div>

46.    The allegations of Paragraphs 1 through 45 are incorporated herein by reference with the same force and effect as if set forth in full below.

47.    The foregoing conduct of Brahmbhatt and Makim constitutes an unfair method of competition.

48.    As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III, IV, V and VI, Merrill Lynch demands judgment in its favor and against Brahmbhatt and Makim for temporary and preliminary injunctive relief pending an expedited arbitration hearing on the merits before a duly appointed panel of arbitrators to be held pursuant to Rule 13804(b) of the National Association of Securities Dealers Code of Arbitration Procedure.

Dated: June 4, 2008                Respectfully submitted,

MURPHY & SHAFFER LLC

Robert T. Shaffer, III
(MD USDC Bar No. 04074)
John J. Connolly
(MD USDC Bar No. 09537 & DC Bar No. 495388)
36 South Charles Street, Suite 1400
Baltimore, Maryland 21201
Phone: (410) 783-7000
Fax: (410) 783-8823

Of Counsel:

Christopher S. Koller, Esquire
Beth Delaney, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
Paoli, Pennsylvania 19301
Phone: (610) 408-2000
Fax: (610) 408-9000

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Merrill Lynch Pierce Fenner & Smith, Inc., International Square, 1850 K Street NW, Suite 700, Washington, D.C. 20006 | Jinesh Brahmbhatt, 11210 Marwood Hill Drive, Potomac, Maryland 20854 and Darshan Makim, 2801 Quebec Street NW, Apt. 403-N, Washington, D.C. 20008 |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert T. Shaffer, III
(MD USDC Bar No. 04074)
John J. Connolly
(MD USDC Bar No. 09537 & DC Bar No. 495388)
Suite 1400
36 South Charles Street
Baltimore, Maryland 21201

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ● 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ● 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

- ☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ⊙ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Injunctive Relief, Breach of Contract, Misappropriation of Trade Secrets, Tort-Conversion, Breach of Duty of Loyalty, Unfair Competition

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ **JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  June 4, 2008        SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT A

# FINANCIAL CONSULTANT

# EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

1.      All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2.      If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a)     to transfer from Merrill Lynch to me or to my new employer, or

(b)     to open a new account with me or with my new employer, or

(c)     to otherwise discontinue its patronage and business relationship with Merrill Lynch.

**EXHIBIT**

**A**

3.   ·   I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4.   In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

(a)   that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

(b)   that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

(c)   that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5.   For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

6.   If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written

*continued*

Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7.     NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8.     I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RE-STRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDER-STAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date:     2/6/95

Jinesh Brahmbhatt

Financial Consultant

Date:     2/13/95

For Merrill Lynch, Pierce, Fenner & Smith Inc.

# EXHIBIT B

## FINANCIAL ADVISOR
## EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

     1.    <u>All records</u>, whether original, duplicated, computerized, memorized, handwritten, or in any other form, <u>and all information</u> contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at anytime thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

     2.    If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and a period for one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purposes of initiating, encouraging or requesting any Account:

          (a)    to transfer from Merrill Lynch to me or to my new employer, or

          (b)    to open a new account with me or with my new employer, or

          (c)    to otherwise discontinue its patronage and business relationship with Merrill Lynch.



EXHIBIT

B

3.      I agree that all at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4.      In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

(a)     that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

(b)     that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

(c)     that I be further enjoined and restrained, for a period of one year, from accepting business from any Accounts who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5.      For purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction. Further, in the event I voluntarily resign my employment, I will take no action (either by court proceedings or otherwise), to inhibit in any way Merrill Lynch's rights under paragraph 4 herein.

*Continued*

6.     If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntary agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said panel renders a full and final decision.

7.     NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8.     I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date: _8-31-5_____          _____
                                                                Financial Advisor


Date: _____          _____
                                                                For Merrill Lynch, Pierce,
                                                                Fenner & Smith Inc.

# EXHIBIT C

TO:          **All Employees**

FROM:        **Bonnie, Peter & Carlos**

DATE:        **November 8, 2007**

Re:          **Compliance Outline for Private Client Financial Advisor**

<div align="center">

## ATTESTATION - 2008

</div>

Enclosed please find the M.L. website link that will bring you to the **Compliance Outline for Private Client Financial Advisor** (February 2007). You are required to review the outline and acknowledge your understanding of its contents annually. If you have questions about this material or other compliance related issues, please consult with your Administrative Manager or Compliance Officer. This outline is a reminder and quick reference source.

**Please return a signed copy of this attestation to Carlos Heusser by December 7, 2007.**

**\*\*To open website, hold down CTRL key + left click on link and hit OK\*\***

http://pnp.worldnet.ml.com:8080/LIB/comp_d/print.pdf

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

( X ) I have read, understand and agree to comply with the policies set forth in the *Compliance Outline for Private Client Financial Advisors*; last revised on February 2007.

Jinesh Brahmbhatt
*Name (type/printed*

F A
*Position/Title*

*Signature*

12/11/07
*Date*

**Return to Carlos Heusser no later than Friday, December 7, 2007. Your cooperation in this matter is greatly appreciated.**

EXHIBIT

C

# EXHIBIT D

TO:         **All Employees**

FROM:       **Bonnie, Peter & Carlos**

DATE:       **November 8, 2007**

Re:         **Compliance Outline for Private Client Financial Advisor**

### ATTESTATION - 2008

Enclosed please find the M.L. website link that will bring you to the **Compliance Outline for Private Client Financial Advisor** (February 2007). You are required to review the outline and acknowledge your understanding of its contents annually. If you have questions about this material or other compliance related issues, please consult with your Administrative Manager or Compliance Officer. This outline is a reminder and quick reference source.

**Please return a signed copy of this attestation to Carlos Heusser by December 7, 2007.**

**\*\*To open website, hold down CTRL key + left click on link and hit OK\*\***

`http://pnp.worldnet.ml.com:8080/LIB/comp_d/print.pdf`

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

I have read, understand and agree to comply with the policies set forth in the *Compliance Outline for Private Client Financial Advisors*; last revised on February 2007.

_Darsha Muksim_
*Name (type/printed)*

_FA_
*Position/Title*

_[signature]_
*Signature*

_11/27/7_
*Date*

**Return to Carlos Heusser no later than Friday, December 7, 2007.   Your cooperation in this matter is greatly appreciated.**

**EXHIBIT
D**

# EXHIBIT E

COMPLIANCE OUTLINE FOR PRIVATE CLIENT FINANCIAL ADVISORS

# MERRILL LYNCH, PIERCE, FENNER & SMITH INC.

## COMPLIANCE OUTLINE

## FOR

## PRIVATE CLIENT FINANCIAL ADVISORS

### February 2007

This outline is a reminder and quick reference source. It does not replace the *Merrill Lynch & Co. Inc. Policy Manual*, the *Branch Office Compliance Policy Manual*, the *Procedures Manual for Branch Offices* or other more detailed sources. It is intended to help Financial Advisors avoid situations that can lead to complaints, regulatory problems or adverse publicity.

**You are required to review the outline and acknowledge your understanding of its contents annually.**

**IF YOU HAVE QUESTIONS ABOUT THIS MATERIAL OR OTHER COMPLIANCE RELATED ISSUES, PLEASE CONSULT WITH YOUR MANAGER OR COMPLIANCE OFFICER.**

EXHIBIT

E



# Privacy Policy – Confidentiality of Client Information

*Last Revised: June 2006*

Merrill Lynch policy requires the protection of client information. All employees, consultants and vendors must:

- Be aware of the Merrill Lynch client information that their business handles, and ensure that its use is appropriately restricted. This includes:

- Authenticating individuals prior to discussing any client matters.

- Providing access to client information solely on a need-to-know basis.

- Granting non-Merrill Lynch access to client information only upon a client's authorization or when permitted or required by law, and when necessary, pursuant to a written agreement that contains appropriate privacy and confidentiality provisions.

- Use client information solely for legitimate Merrill Lynch business purposes and consistent with the policies, procedures, client preferences and agreements which govern its use.

- Secure client information as it is collected, used, stored, shared, transferred and discarded.

Report any breach or compromise of client information. All employees, consultants and vendors must handle individual client personal information in accordance with the Merrill Lynch Global Privacy Pledge and the Online Privacy Statement.

# Tax Advice

You may not advise clients on tax issues. Clients seeking tax guidance should be advised to consult a qualified tax advisor. This does not prohibit the dissemination of general tax information included in Firm material or tools prepared for that purpose.

# Blue Sky Laws

You must verify, prior to recommending a purchase, that the security is qualified in the client's state of residence. NYSE or ASE-listed securities are generally qualified in all states. Most states permit solicitation of orders for non-qualified securities (as principal or agent) from certain institutional accounts. To verify the Blue Sky status of a security, access the SMI page in the Markets Book on TGA or call the Blue Sky Unit in Compliance.

Accepting unsolicited *agency* orders for non-qualified securities traded in the secondary market is permitted in most states. Confirmations must be marked "UNSOLICITED" and/or a written acknowledgment of non-solicitation must be obtained from the client.

Blue Sky requirements applicable to securities must not be confused with agent registration requirements that apply to individuals. Exemptions or waivers with respect to securities transactions do not negate the need for state sales agent registration.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MERRILL LYNCH, PIERCE, FENNER          :
& SMITH INCORPORATED,                  :
                                       :
                                       :
                                       :
              Plaintiff,               :
                                       :
        v.                             :        CASE NO:
                                       :
JINESH BRAHMBHATT,                     :
DARSHAN MAKIM                          :
                                       :
              Defendants.              :

### AFFIDAVIT OF GERALD D. WEBER

I, Gerald D. Weber, being duly sworn according to law, do depose and state as follows:

1.     I am an information technology specialist. I have been retained by Merrill Lynch to review the computers used by the Defendants while they were employed by Merrill Lynch. I currently own a computer consulting company known as G.D. Weber & Associates, located at 3 Badger Court, Novato, California. I am a Certified Network Administrator certified through Novell Corporation. This certification process required extensive study of Microsoft Windows, the operating system used by the Merrill Lynch computer network. I have also completed the course work to become a certified Network Engineer. I graduated from California State University, Sacramento, in 1976 with a degree in Criminal Justice. I worked for two years as a Police Officer for the City of Modesto, California, and was certified under the California Commission on Peace Officers Standards and Training. Thereafter, I was employed in the securities industry as



EXHIBIT
F

a sales manager and business consultant.

2.     I have over twenty-five years experience in the securities business and ten years conducting computer reviews and analyzing and managing user usage and patterns for securities firms. For the past eight years, I have had an active practice in forensic examination of computers on behalf of securities firms.

3.     I was asked to examine the Merrill Lynch owned network workstations used by Defendants, specifically for file access or removal of customer files or data, including the removal of this data by removable storage device.

4.     On May 27, 2008 and May 29, 2008, I visited Merrill Lynch's Washington, D.C. office, where Defendants were formally employed, and performed an examination of the workstations assigned to Brahmbhatt and Makim.

5.     In checking the file activity for Brahmbhatt's workstation, I observed that since February 23, 2008, Brahmbhatt used two different removable storage devices (commonly referred to as "thumb drives" or "flash drives") in connection with his workstation. I printed an USB Devices List identifying the description and serial number of each thumb drive used, and printed a copy of Brahmbhatt's computer activity since October 2007, a true and correct copy of which is attached hereto as Exhibit "1."

6.     Namely, on Saturday, February 23, 2008, Brahmbhatt inserted a LEXAR USB Device or thumb drive into his Merrill Lynch assigned workstation. See Exhibit "1," p. 1.

7.     A thumb drive, as used by Brahmbhatt and Makim, is a small device that plugs into the USB port of a computer and allows the user to copy or download files stored on the host computer to the drive. The files stored on the thumb drive can then be

"CL List" is commonly used by Financial Advisors to refer to client lists and client information. On the basis of my years of experience in this industry and based on the name of the files, the aforementioned files likely contain Merrill Lynch customer and/or prospect information, as well as Merrill Lynch proprietary information. Moreover, assessing and/or downloading files of this type on a thumb drive is inconsistent with Makim's prior workstation usage, as he had not assessed or downloaded files of this type on a thumb drive in the time period I was able to review.

12.    It is my understanding that removable storage devices, such as USB or thumb drives, were not left behind upon Brahmbhatt's and Makim's resignation.

13.    I declare under penalty of perjury that the foregoing is true and correct.

Gerald D. Weber

Sworn to and Subscribed
Before me this ⁴ day
of June, 2008.

Notary Public

MAITEXA GALZAGORRY
COMM. #1671985
NOTARY PUBLIC • CALIFORNIA
MARIN COUNTY
My Comm. Expires June 28, 2010

4

# EXHIBIT 1

**USB Devices List**

| Device Name | Description | Device Type | Connected | Drive Letter | Serial Number | Created Date |
|---|---|---|---|---|---|---|
| USB Flash Memory | USB Flash Memory USB Device | Mass Storage | No | | 0706180902313 | 5/7/2008 10:42:04 AM |
| JD 360 | LEXAR JD 360 USB Device | Mass Storage | No | | 35A3FB04141002051006 | 2/23/2008 4:46:55 PM |



| Name | Date Modified |
|------|---------------|
| DM | 5/15/2008 3:33 AM |
| Copy of 401(k) 031008.xls | 5/15/2008 3:33 AM |
| DC-MD-VA 031008 II.xls | 5/14/2008 10:33 AM |
| NETSAP (E) | 5/7/2008 10:48 AM |
| http___adweb_worldnet_ml.pdf | 5/7/2008 10:48 AM |
| http___adweb_worldnet_ml2.pdf | 5/7/2008 10:45 AM |
| Updated Log.xls | 4/29/2008 4:51 PM |
| Log.xls | 4/29/2008 4:33 PM |
| LMA | 4/29/2008 4:33 PM |
| Mandates 2008 | 4/29/2008 2:37 PM |
| http___mlcontent_intuition II.pdf | 4/29/2008 2:37 PM |
| http___mlcontent_intuition.pdf | 4/29/2008 2:31 PM |
| http___mlu_worldnet_ml.pdf | 4/29/2008 2:26 PM |
| client name and address for postage.xls | 3/25/2008 3:43 PM |
| Hodge Client's and account no..xls | 3/20/2008 3:35 PM |
| IPO List1.xls | 3/13/2008 3:11 PM |
| Sports Agents.doc | 3/13/2008 3:19 AM |
| Agent List | 3/13/2008 3:19 AM |
| Call Script 031008.doc | 3/11/2008 5:27 PM |
| Copy of 401(k) 01-27-08.xls | 3/11/2008 2:34 PM |
| DC-MD-VA 02-14-08 II.xls | 3/10/2008 10:21 AM |
| Final Pitch BookII.ppt | 3/4/2008 5:41 PM |
| AA - PBIG PP | 3/4/2008 5:41 PM |
| Xerxes 02-25-08.xls_Completed.xls | 3/4/2008 5:25 PM |
| WMB Group 02-25-08.xls | 3/4/2008 5:25 PM |
| Client Spreadsheet | 3/4/2008 5:25 PM |
| Estate Planning | 3/4/2008 1:41 AM |
| 308420PM.ppt | 3/4/2008 1:41 AM |
| Internet Explorer | 3/4/2008 12:58 AM |
| http--adweb.worldnet.ml.com-unauthenticated-groupa-p... | 3/4/2008 12:58 AM |
| OverviewFamilyFoundations.ppt | 3/4/2008 12:36 AM |
| Family Foundations | 3/4/2008 12:36 AM |
| Wealth Advisory & Family Office Services | 3/4/2008 12:33 AM |
| FOSoverview3FA .ppt | 3/4/2008 12:33 AM |
| Financial Solutions | 3/3/2008 11:38 PM |
| ConcenStockStratOverview.ppt | 3/3/2008 11:38 PM |

| Name | Date Modified ▼ |
|---|---|
| html (2) | 3/3/2008 10:37 PM |
| default.html (2) | 3/3/2008 10:37 PM |
| PrivatePlanningBrochureSept2006.ppt | 3/3/2008 10:12 PM |
| Private Planning | 3/3/2008 10:12 PM |
| Deron Williams - PBIG Presentation.ppt | 3/3/2008 10:10 PM |
| Final Pitch Book.ppt | 3/3/2008 10:04 PM |
| ML Documents | 2/24/2008 11:56 AM |
| GENERAL PRESENTATION (JAN)-1.ppt | 2/24/2008 11:56 AM |
| PBIGOverview.ppt | 2/24/2008 11:35 AM |
| Basic Building Blocks | 2/24/2008 11:35 AM |
| Template | 2/24/2008 11:30 AM |
| PBIGOnscreenTemplatewithInstructionsFINAL.ppt | 2/24/2008 11:30 AM |
| PBIGAthletes1.ppt | 2/23/2008 10:45 PM |
| PBIG Athletes | 2/23/2008 10:45 PM |
| TableofContents.ppt | 2/23/2008 10:04 PM |
| MLOverview.ppt | 2/23/2008 10:03 PM |
| http--adweb.worldnet.ml.com-unauthenticated-groupa-p... | 2/23/2008 6:16 PM |
| http--adweb.worldnet.ml.com-unauthenticated-groupa-p... | 2/23/2008 6:10 PM |
| Taxable Fixed Income | 2/22/2008 12:02 PM |
| Convertible.pdf | 2/22/2008 12:02 PM |
| ABCS_of_TIPS.pdf | 2/22/2008 12:00 PM |
| Munis | 2/22/2008 11:58 AM |
| MuniLIBORFloater_FAGuide121307.pdf | 2/22/2008 11:58 AM |
| Muni_QuickMktgGuide111607.pdf | 2/22/2008 11:58 AM |
| Fixed Income Investing.ppt | 2/22/2008 11:58 AM |
| Money Market Investing.ppt | 2/22/2008 11:57 AM |
| 326201PM.doc | 2/22/2008 11:57 AM |
| Smithsrankings2006.pdf | 2/22/2008 11:56 AM |
| 326205PM.ppt | 2/22/2008 11:56 AM |
| Executive Tax Services.doc | 2/21/2008 4:49 PM |
| FoundationProspectingForm04.doc | 2/21/2008 4:48 PM |
| DetailedListingofFoundationServices.doc | 2/21/2008 4:47 PM |
| FamilyFoundationConsultingMatrix.ppt | 2/21/2008 4:47 PM |
| Foundations.doc | 2/21/2008 4:47 PM |
| Concentrated Stock Strategies.doc | 2/21/2008 4:46 PM |
| Family Office Services.doc | 2/21/2008 4:45 PM |



| Name | Date Modified |
|---|---|
| Family Wealth Services.doc | 2/21/2008 4:44 PM |
| Approved Letters | 2/21/2008 4:32 PM |
| Reporting | 2/21/2008 4:29 PM |
| Investments | 2/21/2008 4:25 PM |
| Hodge AllClientsProspects 2-19-082.xls | 2/19/2008 7:45 PM |
| athletes | 2/7/2008 5:53 PM |
| sonu.xls | 1/31/2008 6:24 PM |
| soni.xls | 1/31/2008 6:24 PM |
| Akula, Satya & Suneetha | 1/29/2008 4:25 PM |
| AkulaMonthlySummary 100307.xls | 1/29/2008 4:24 PM |
| Wilson, Al | 1/29/2008 4:23 PM |
| al wilson01.24.08.xls | 1/29/2008 4:23 PM |
| Wilsonassetall.ppt | 1/24/2008 3:39 PM |
| Purohit Contributions 06-20-07.ppt | 1/24/2008 3:20 PM |
| Mohan1.24.08.ppt | 1/24/2008 3:17 PM |
| pg.png | 1/24/2008 12:59 PM |
| lpx50-s.gif | 1/24/2008 12:59 PM |
| WEB62.gif | 1/24/2008 12:59 PM |
| Praful desai contributons.xls | 1/22/2008 6:22 PM |
| Jitendra & Saryu Desai2.xls | 1/11/2008 4:52 PM |
| Anjali | 1/11/2008 4:52 PM |
| Jitendra & Saryu Desai.xls | 1/11/2008 11:02 AM |
| tiered client to do 01-09-08.xls | 1/9/2008 4:31 PM |
| Client to do | 1/9/2008 4:31 PM |
| Tiered To do 010808 (version 1).xls | 1/9/2008 3:52 PM |
| jan 09.xls | 1/9/2008 11:03 AM |
| Interns | 11/29/2007 6:40 PM |
| IPO LIST 7-25-07.xls | 11/29/2007 2:06 PM |
| IPO LIST 6-12-07.xls | 11/29/2007 2:06 PM |
| IPO list.xls | 11/29/2007 2:05 PM |
| Narula.Vijay 11.28.07.ppt | 11/29/2007 1:38 PM |
| Presentations | 11/5/2007 5:51 PM |
| Hankerson Yearly performance 110207.ppt | 11/5/2007 5:51 PM |
| Hankerson Yearly performance 06-11-07.ppt | 11/5/2007 5:51 PM |
| Lauren | 10/31/2007 11:44 AM |
| Ghoorahlistofassets.xls | 10/31/2007 11:44 AM |

# EXHIBIT 2

**USB Devices List**

| Device Name | Description | Device Type | Connected | Drive Letter | Serial Number | Created Date |
|---|---|---|---|---|---|---|
| USB Flash Memory | USB Flash Memory USB Device | Mass Storage | No | | 0706180902313 | 4/30/2008 10:01:48 AM |

**EXHIBIT**

**2**



| Name | Date Modified ∨ |
|------|-----------------|
| OST, Inc (2) | 5/22/2008 12:07 PM |
| OST 401k Statment.pdf | 5/22/2008 12:07 PM |
| crcpdf.pdf | 5/20/2008 9:47 AM |
| Leads | 5/14/2008 10:25 AM |
| Copy of 401(k) 01-27-08.xls | 5/14/2008 10:25 AM |
| Fax Coversheet.doc | 5/13/2008 1:47 PM |
| address list of clients.doc | 5/13/2008 1:38 PM |
| PBIG Athletes | 5/13/2008 10:50 AM |
| Final Pitch BookII Complete.ppt | 5/13/2008 10:50 AM |
| LMA's (2) | 5/12/2008 4:28 AM |
| LMA Log updated.xls | 5/12/2008 4:28 AM |
| Marketing Literature | 5/5/2008 2:42 PM |
| EnrollmentPosterSpanish.pdf | 5/5/2008 2:42 PM |
| PayChex (2) | 5/5/2008 2:40 PM |
| 401k Conversion.pdf | 5/5/2008 2:40 PM |
| Calpers.pdf | 5/5/2008 1:21 PM |
| ML ETF Breakdown3.xls | 5/5/2008 3:21 AM |
| ETF Strat | 5/5/2008 3:21 AM |
| Dipa Strategey.xls | 5/5/2008 3:21 AM |
| Resume's | 5/1/2008 3:20 PM |
| Darsh Resume1.doc (2) | 5/1/2008 3:20 PM |
| NETSAP (E) | 4/30/2008 3:09 PM |
| CL List HodgeII.xls | 4/30/2008 3:09 PM |
| CL List Hodge.xls | 4/30/2008 3:07 PM |
| CL List Darsh.xls | 4/30/2008 11:57 AM |
| Jinesh FA Excel All.pdf | 4/30/2008 11:42 AM |
| Darsh FA Excel All.pdf | 4/30/2008 11:41 AM |
| Darsh FA Excel.pdf | 4/30/2008 11:39 AM |
| 4-25-08 Paystub.pdf | 4/30/2008 10:08 AM |
| 2007 W2.pdf | 4/30/2008 10:07 AM |
| SecuritiesList 1 .xls | 4/30/2008 10:03 AM |
| LMA Log.xls (2) | 4/29/2008 4:59 PM |
| Hyland Associates | 4/29/2008 4:51 PM |
| Copy of 2007census.xls | 4/29/2008 4:51 PM |
| Parts Emails.xls (2) | 4/22/2008 1:52 PM |
| Sample Aviator Lineup.xls | 4/22/2008 4:49 AM |

| Name | Date Modified |
|---|---|
| APCC | 4/22/2008 4:49 AM |
| Copy of APCC returns and ex.... | 4/22/2008 4:49 AM |
| Darsh 02-12-08.xls | 4/21/2008 2:57 PM |
| Clean Client List | 4/21/2008 2:57 PM |
| Cash (2) | 4/21/2008 1:52 PM |
| Kruti | 4/10/2008 2:23 PM |
| 2007 Pipeline.xls | 4/10/2008 4:43 AM |
| MLPA | 4/9/2008 10:45 AM |
| Consults | 4/9/2008 10:42 AM |
| 501(C) 3 | 4/8/2008 2:12 PM |
| Loan Spreads.doc | 4/7/2008 10:13 PM |
| WMB Group FINAL 02-25-08.xls | 4/7/2008 9:59 PM |
| Hodge 2-19-08.xls | 4/7/2008 9:59 PM |
| Janubhai Desai | 4/4/2008 4:59 PM |
| Letterhead 1.doc (2) | 4/4/2008 3:35 AM |
| PAPERWORK FOR EVERYTHING | 4/3/2008 2:28 PM |
| Gathering of statements Doc.... | 4/3/2008 2:28 PM |
| temp | 4/3/2008 9:32 AM |
| 7319_SBLC_Jupiter_3.jpg | 4/3/2008 9:32 AM |
| 7319_SBLC_Jupiter_1.jpg | 4/3/2008 9:28 AM |
| Liqudaton Letters | 4/2/2008 1:34 PM |
| Kaltenmark Accounts.doc | 4/2/2008 1:34 PM |
| Gopal Mistry | 3/28/2008 2:48 PM |
| Allianz Global .doc | 3/28/2008 2:48 PM |
| Allianz Global III.doc | 3/28/2008 2:47 PM |
| 2008-2007 Dist.xls | 3/28/2008 2:31 PM |
| client statment.xls | 3/27/2008 4:32 AM |
| Sports Agents.doc | 3/25/2008 1:21 PM |
| Matt Sherman | 3/25/2008 1:21 PM |
| Smith Barney LOI.doc | 3/24/2008 4:30 PM |
| Fidelity letter.doc | 3/24/2008 4:22 PM |
| Anna Garcia | 3/21/2008 3:51 PM |
| Hodge Clients 01-03-07.xls | 3/12/2008 10:55 AM |
| Client - Prospect Folder | 3/12/2008 10:55 AM |
| Mapping & Line up.xls | 3/12/2008 10:08 AM |
| SCV - Directory.xls | 3/10/2008 3:41 PM |

| Name | Date Modified ▼ |
|---|---|
| Mid Growth | 3/10/2008 3:38 PM |
| MCV - Directory.xls | 3/10/2008 3:38 PM |
| MCG - Directory.xls | 3/10/2008 3:37 PM |
| Large Growth | 3/10/2008 3:32 PM |
| LC Exports- Directory.xls | 3/10/2008 3:02 PM |
| Group AG Fund List as of 1-31... | 3/10/2008 11:16 AM |
| 2008 | 3/10/2008 11:16 AM |
| ETF pitch3.doc (2) | 3/10/2008 10:29 AM |
| ETF pitch1.doc (2) | 3/10/2008 10:29 AM |
| Call Scripts (2) | 3/10/2008 10:29 AM |
| 401k script I.doc (2) | 3/10/2008 10:29 AM |
| Random combacks.doc (2) | 3/10/2008 10:12 AM |
| MLPA.pdf | 3/5/2008 3:32 PM |
| PBIGAthletes LOGO.ppt | 3/4/2008 6:32 PM |
| Xerxes 02-25-08.xls | 3/4/2008 2:04 PM |
| Final Pitch BookII.ppt | 3/4/2008 12:22 PM |
| All Clients (01-02-08).xls | 2/28/2008 2:51 PM |
| JT NFL Savings Plan.xls | 2/26/2008 11:34 AM |
| James Thrash | 2/26/2008 11:34 AM |
| Hodge AllClientsProspects 2-1... | 2/25/2008 2:43 PM |
| All Accounts (Master) 02-12-0... | 2/25/2008 2:18 PM |
| Pitchbook Library | 2/23/2008 5:51 PM |
| CFO Presentation.ppt (2) | 2/23/2008 5:51 PM |
| Seminars (3) | 2/23/2008 5:17 PM |
| Managing Job Transitions - P... | 2/23/2008 5:17 PM |
| Ibbotson Charts | 2/23/2008 5:17 PM |
| EstatePlanning.ppt | 2/23/2008 5:17 PM |
| Charts- Morningstar.ppt (2) | 2/23/2008 5:17 PM |
| ETF's | 2/23/2008 5:16 PM |
| ETF Presentation.ppt | 2/23/2008 5:16 PM |
| SDB_client_presentation_plan... | 2/23/2008 5:15 PM |
| Pitchbook.ppt | 2/23/2008 5:11 PM |
| Wealth Management Process.... | 2/23/2008 5:11 PM |
| Darsh Pitchbook.ppt | 2/23/2008 5:10 PM |
| Alternative Investments.ppt | 2/23/2008 5:06 PM |
| Darsh - New pitch book 06-06... | 2/23/2008 5:01 PM |

| Name | Date Modified |
|---|---|
| ML ICEO Exclusive contacts.xl... | 2/22/2008 4:24 PM |
| Hodge Leads (2) | 2/22/2008 4:24 PM |
| Telecom Strategies | 2/21/2008 3:09 PM |
| Fund Analysis.xls (2) | 2/21/2008 3:09 PM |
| Telecomm Enrollment kit.pdf | 2/21/2008 12:24 PM |
| 401k Profile Questions.doc | 2/20/2008 8:09 PM |
| Wealth process.doc (2) | 2/20/2008 7:45 PM |
| Final Paperwork | 2/19/2008 5:59 PM |
| PBIG Athletes Cover and Bio.... | 2/19/2008 2:53 PM |
| Barnett Asset Allocation.xls | 2/18/2008 9:50 PM |
| Advanced Cardio 401(k) (2) | 2/16/2008 3:00 PM |
| Guided Fund.PDF | 2/15/2008 5:29 PM |
| Fund Analysis II (revised.xls (2) | 2/15/2008 5:12 PM |
| Paychex3.pdf | 2/15/2008 4:06 PM |
| All Funds - 1 3 5.xls | 2/15/2008 4:02 PM |
| Fund Analysis II.xls | 2/15/2008 3:59 PM |
| Darsh Leads | 2/14/2008 5:45 PM |
| HOL-4522a591.xls (2) | 2/14/2008 5:17 PM |
| DC-MD-VA 02-14-08.xls | 2/14/2008 4:44 PM |
| Landon Ray | 2/14/2008 4:28 PM |
| CEO List Landon.xls.htm | 2/14/2008 4:28 PM |
| Darsh Prospects.CSV | 2/14/2008 4:25 PM |
| Darsh Prospects.CSV (2) | 2/14/2008 4:25 PM |
| The_Fixed_Income_Digest.pdf | 2/14/2008 1:56 PM |
| The_Market_Economist__8_F... | 2/14/2008 1:54 PM |
| Navigator Models - Telecom.doc | 2/14/2008 5:33 AM |
| 401K Adoption Agreement.pdf | 2/13/2008 6:44 PM |
| LM Large Cap Growth Prospec... | 2/13/2008 6:44 PM |
| Amrik Mehli | 2/13/2008 3:28 PM |
| Amrik Mehli.xls (2) | 2/13/2008 3:28 PM |
| Lincoln Financial Group | 2/13/2008 3:21 PM |
| 30070-APP%20ASSUREC.pdf | 2/13/2008 3:21 PM |
| ALC-APP 8-07.pdf | 2/13/2008 3:21 PM |
| Customer ID.pdf | 2/13/2008 3:21 PM |
| RepalAL AZ CO HI IA KY L... | 2/13/2008 3:19 PM |
| 06 Telecomm Census (complet... | 2/13/2008 11:15 AM |

| Name | Date Modified |
|------|---------------|
| Internet Explorer (3) | 2/11/2008 7:08 PM |
| http--pcoeui2.services.us.ml.... | 2/11/2008 7:08 PM |
| Concentrated | 2/11/2008 6:58 PM |
| Prospect Dev. Master.xls (2) | 2/11/2008 6:27 PM |
| EES_Restricted_Documents_... | 2/11/2008 5:44 PM |
| http--gti.worldnet.ml.com-cat... | 2/11/2008 2:48 PM |
| Prospect Dev. MasterI.xls (2) | 2/11/2008 1:52 PM |
| Indian Dr. in New Orleans.xls ... | 2/11/2008 1:51 PM |
| Hodge Outlook Contacts.xls (2) | 2/11/2008 1:51 PM |
| BlackBerry Contacts.xls | 2/11/2008 1:50 PM |
| Tom Millon | 2/4/2008 7:57 PM |
| ETF Portfolio Recomendation ... | 2/4/2008 7:57 PM |
| Client Info.doc | 1/29/2008 8:52 PM |
| Investmnet StratgeyII.ppt | 1/23/2008 2:07 PM |
| MLMCFOnlineGetStatementsp... | 1/17/2008 7:11 PM |
| Business Plan-ML.doc (2) | 1/7/2008 6:16 PM |
| Description.doc | 12/20/2007 5:16 PM |
| Phoenix RE.pdf | 12/7/2007 4:24 PM |
| DCEO.07.03.pdf | 12/7/2007 3:11 PM |
| Franklin Templeton.pdf | 12/7/2007 11:52 AM |
| TPA Services Agreement.pdf | 11/27/2007 4:09 PM |
| Plan Insights | 11/20/2007 12:42 PM |
| PI_3Q2007.pdf | 11/20/2007 12:42 PM |
| 401k script I.doc | 11/13/2007 2:01 PM |
| WCMA Cold Calling Script Bak... | 11/13/2007 2:01 PM |
| Funds Master.xls | 10/28/2007 6:08 PM |
| AG Strat.ppt | 10/28/2007 6:07 PM |
| MLPAPdfContract_NEW.pdf | 10/22/2007 3:23 PM |
| OSU.pdf | 10/19/2007 1:05 PM |
| Dept. Of Veteran Affairs | 10/17/2007 3:38 AM |
| New Comparability | 10/16/2007 5:27 PM |
| ADP | 10/16/2007 11:19 AM |
| Parts Emails.xls | 10/16/2007 11:12 AM |
| MFA Selects Updates as of 8-... | 10/16/2007 10:39 AM |
| Melhi Annuities2.xls | 10/15/2007 5:39 PM |
| Verity Family | 10/10/2007 3:20 PM |

| Name | Date Modified ▼ |
|------|-----------------|
| Account status change letter.... | 10/4/2007 6:05 PM |
| ETF Portfolio Recomendation ... | 9/25/2007 2:57 PM |
| Pention Protection Act 2006.pdf | 9/17/2007 9:17 AM |
| key provisions of the pension ... | 9/17/2007 9:07 AM |
| =110004 Seligman wfields.pdf | 9/17/2007 9:07 AM |
| ETF Breakdown.xls | 9/14/2007 4:11 AM |
| OppenheimerCshares.pdf | 9/13/2007 8:17 PM |
| Executives in DC Metro 2800.... | 9/13/2007 6:32 PM |
| Recommended Fund Line Up.xls | 9/12/2007 6:41 PM |
| LifeCycle Funds_ED flyer_FIN... | 8/30/2007 2:26 PM |
| Compliance | 8/19/2007 9:38 PM |
| Estate Planning | 8/17/2007 3:17 PM |
| Lord Abbett I.xls (3) | 8/15/2007 2:35 PM |
| By County Leads | 8/14/2007 9:33 AM |
| Oppenheimer Fact Sheet.pdf | 7/31/2007 9:10 AM |
| OST, Inc | 7/30/2007 5:44 PM |
| Fund Analysis II (revised.xls | 7/30/2007 5:44 PM |
| FA Trading Instructions.pdf (3) | 7/27/2007 2:01 PM |
| Cash | 7/27/2007 2:01 PM |
| Wire LOA.doc | 7/27/2007 1:46 PM |
| Net 100ltd (2) | 7/27/2007 1:46 PM |
| Administration PDF's | 7/23/2007 10:01 PM |
| dwa3.csv | 7/23/2007 4:09 PM |
| dwa2.csv | 7/23/2007 4:09 PM |
| dwa3.htm | 7/23/2007 4:04 PM |
| dwaportfolio1.xls | 7/23/2007 4:02 PM |
| dwaportfolio4.csv | 7/23/2007 3:36 PM |
| dwaportfolio3.csv | 7/23/2007 3:36 PM |
| dwaportfolio2.csv | 7/23/2007 3:35 PM |
| Snack Food Association | 7/5/2007 10:46 AM |
| Pawan Kohli (3) | 7/3/2007 4:33 AM |
| All Clients Prospects 0443 (04... | 7/2/2007 10:07 AM |
| Letterhead1.doc | 6/28/2007 4:41 AM |
| Lisa Hornstein | 6/20/2007 3:28 PM |
| Estate Planning.DOC | 6/20/2007 3:08 PM |
| CRC's | 6/19/2007 1:03 PM |

# EXHIBIT G

08 0957

FILED

JUN - 4 2008

Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MERRILL LYNCH, PIERCE, FENNER            :
& SMITH INCORPORATED,                    :
                                         :
                                         :
                                         :
              Plaintiff,                 :
                                         :
    v.                                   :        CASE NO:
                                         :
JINESH BRAHMBHATT,                       :
DARSHAN MAKIM                            :
                                         :
              Defendants.                :

## AFFIDAVIT OF CATHY ACHTER

I, Cathy Achter, being duly sworn according to law, do depose and state as follows:

1.      I am the Regional Business Manager of the Capital Region of Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), which includes the Merrill Lynch branch office located in Washington, D.C. ("Washington, D.C. Office").

2.      Defendants were employed in Merrill Lynch's Washington, D.C. Office until their resignation from Merrill Lynch on Thursday, May 22, 2008. As the Regional Business Manager of the Capital Region, I am responsible for the supervision of its employees, office operations, sales supervision, and implementation of firm policy and am familiar with Defendants.

3.      On the afternoon of Thursday, May 22, 2008, Defendants, without advance notice, submitted resignation letters to Merrill Lynch, which indicated that they were immediately leaving Merrill Lynch.

4.      Brahmbhatt was employed at Merrill Lynch since February 13, 1995, and



EXHIBIT

G

began his employment at Merrill Lynch in its training program.

5.   Makim was employed at Merrill Lynch since October 3, 2005, and began his employment at Merrill Lynch in its training program.

6.   At the time of their resignation from Merrill Lynch, Brahmbhatt and Makim worked as a team serving Merrill Lynch customers.

7.   It was subsequently learned that after Defendants resigned from Merrill Lynch they immediately joined LPL Financial Corporation ("LPL"), a competitor of Merrill Lynch located in nearby Vienna, VA.

8.   On or about May 27, 2008, counsel for Merrill Lynch sent correspondence to Defendants demanding return of all confidential and proprietary Merrill Lynch information and customer records in their possession. Defendants did not respond.

9.   On or about May 27, 2008 and May 29, 2008, Defendants' Merrill Lynch computer workstations were examined by a computer forensic professional. This review indicated that Defendants accessed removable storage drives, commonly referred to as a flash drives, prior to their resignation from Merrill Lynch, and appeared to download and/or access files containing proprietary Merrill Lynch information and customer data from their Merrill Lynch workstations.  The drives could not be located in the Washington, D.C. Office; indicating that Brahmbhatt and Makim did not leave the flash drives with Merrill Lynch after their resignations as required by Merrill Lynch policy.

10.   It is against Merrill Lynch policy and the terms of Defendants' employment agreements to take proprietary Merrill Lynch information or confidential client information, and the use of this information for non-Merrill Lynch business purposes, including solicitation of these customers, is strictly prohibited.

11.   After the resignations, I requested that Financial Advisors in the

2

Washington, D.C. Office under my supervision contact the Merrill Lynch customers whose accounts were previously serviced by Defendants.

12.    I learned from the Financial Advisors who spoke with the customers whose accounts were previously serviced by Defendants that Defendants had contacted the customers requesting that they transfer their accounts to LPL. In fact, two customers, B.K. and J.M. described being contacted repeatedly by Defendants since their resignation from Merrill Lynch.

13.    Additionally, Defendants sent Merrill Lynch customers a solicitation email. The email sent by Brahmbhatt and received by one customer (with the customer's name redacted) is attached hereto as Exhibit "A."

14.    I am personally familiar with the facts and circumstances of Defendants' employment with Merrill Lynch, have reviewed their personnel files, and I am familiar with the agreements and policies setting forth their obligations to Merrill Lynch, including their employment <u>Agreement</u> and Merrill Lynch <u>Compliance Outline for Private Client Financial Advisors</u> reviewed by Defendants on an annual basis. (see Exhibits "A" -- "D" to Merrill Lynch's Complaint). I also am familiar with the client investment records, monthly statements, account revenue reports, performance histories, and other records and information relating to the accounts that Defendants serviced while employed at Merrill Lynch, as well as the wage records, registration and licensing records, compliance records, and other documents related to their employment with Merrill Lynch.

15.    In connection with Merrill Lynch's agreement to hire and train Defendants and to give them operational and sales support, Defendants signed an employment <u>Agreement</u> which contains post-employment restrictions against their removal and/or use

3

of client information and their solicitation of Merrill Lynch clients (See Exhibits "A" –
"B" to Merrill Lynch's Complaint).

16.     Throughout Defendants' employment, Merrill Lynch paid for their
training, licensing, annual registration fees with the Financial Industry Regulatory
Authority, NASDAQ and the District of Columbia securities commission, compensated
them, and provided them with employment-related benefits and opportunities, facilities,
sales support, staff and sales assistants, research, market reporting services, state of the
art computer equipment and systems, clearing and operations services, client accounts
and leads, intensive introductory training and continuing on-the-job training, access to
experts in various product sub-specialties such as asset managers, tax specialists,
retirement planners, pensions, insurance specialists, etc., product inventory, sales
literature, and many other benefits and advantages.

17.     As a result of their employment with Merrill Lynch, Defendants acquired
access to Merrill Lynch accounts representing over $72 million in assets under Merrill
Lynch management.    These Merrill Lynch accounts generated over $789,000 in
commission revenues for Merrill Lynch in the last twelve months.

18.     Defendants have deliberately violated the covenants contained within their
employment agreements and other Merrill Lynch policies by misappropriating and
misusing Merrill Lynch's proprietary and client information, and will use that
information to solicit Merrill Lynch clients to transfer their accounts to LPL.

19.     Despite their contractual obligations, prior to the date of their resignation
from Merrill Lynch, Defendants took with them extensive customer information and
records, as well as Merrill Lynch customer prospects, and will use that information to
solicit Merrill Lynch's clients and customer prospects.

4

20.    Defendants continue to wrongfully possess confidential information relating to Merrill Lynch clients that they serviced.

21.    Merrill Lynch has taken reasonable steps to maintain the confidentiality of Merrill Lynch's client information and client records and to ensure that these records and information are not disclosed outside of Merrill Lynch.  Defendants were and are fully aware of their responsibility for complying with Merrill Lynch's policy of confidentiality.

22.    Every year, our office conducts a compliance review to ensure that the confidentiality of Merrill Lynch's records is maintained.  In addition, each registered employee reviews our Compliance Outline for Private Client Financial Advisors.  This Compliance Outline contains a section specifically requiring that all client records and all information provided to Merrill Lynch by our clients be maintained confidential.  More specifically, Merrill Lynch's Compliance Outline provides follows:

> **Merrill Lynch policy requires the protection of client information.  All employees,** consultants and vendors **must:**
>
> •    Be aware of the Merrill Lynch client information that her business handles, and ensure that its use is appropriately restricted.  This includes:
>
> •    Authenticating    individuals    prior    to discussing any client matters.
>
> •    Providing access to client information solely on a need-to-know basis.
>
> •    Granting non-Merrill Lynch access to client information only upon a client's authorization or when permitted or required by law, and when necessary, pursuant to a written agreement that contains appropriate privacy and confidentiality provisions.
>
> •    **Use    client    information    solely    for** legitimate **Merrill    Lynch    business    purposes    and**

5

consistent with the policies, procedures, client preferences and agreements which govern its use.

- Secure client information as it is collected, used, stored, shared, transferred, and discarded.

Report any breach or compromise of client information. All employees, consultants and vendors must handle individual client personal information in accordance with the Merrill Lynch Global Privacy Pledge and the Online Privacy Statement.

(See Exhibits "C" - "E" to Merrill Lynch's Complaint)(emphasis added).

23.    Our office has also implemented many other procedures to maintain the confidentiality of Merrill Lynch's proprietary, confidential, and sensitive information that our clients entrust to us. For example, our office policy is that a Financial Advisor is provided with access only to confidential information pertaining to the particular clients that he/she services. Each Financial Advisor is permitted access to confidential client information only on a "need to know" basis. In addition, Merrill Lynch management personally reviews all outgoing correspondence from all of the employees in the office to ensure that no confidential or proprietary information is disclosed outside of Merrill Lynch.

24.    The Merrill Lynch clients serviced by Defendants were developed by Merrill Lynch at great expense and over a number of years. Merrill Lynch's client list is the lifeblood of its business and the expenditures incurred by Merrill Lynch in obtaining its clients include the millions of dollars spent by Merrill Lynch every year on national and local advertising, the tens of thousands of dollars it costs Merrill Lynch to train its sales force (including Defendants), the millions of dollars a year Merrill Lynch spends for sales support staff, clearing services, operations personnel, systems and support, management and compliance supervision, salaries, annual registration fees, computer

6

services and equipment, phone, mail, research, literature, seminars, trade and other professional news publications, promotional events, the retention of experts in tax, asset management, employee and health benefits, insurance, real estate, estate planning, and numerous other sub-specialties, and the many other expenditures Merrill Lynch incurs in maintaining its goodwill in the securities industry and in compiling its client list.

25.    The Merrill Lynch accounts serviced by Defendants resulted directly from many of the vast expenditures incurred by Merrill Lynch, including advertising, training, equipment, registration, staff, the retention of industry experts, research and development, and seminars.  Merrill Lynch hired and trained Defendants and gave them the benefit of Merrill Lynch's vast investment in resources and operations, all of which enabled Defendants to attract, maintain, and service client accounts.  These accounts represent an extremely small percentage of the many millions of "potential" accounts existing in the public at-large.

26.    Defendants' confiscation of confidential Merrill Lynch records and customer information, as well as their preparation to solicit and/or solicitation of Merrill Lynch customers and Merrill Lynch customer prospects, constitutes misappropriation of Merrill Lynch trade secrets, breach of contract, a breach of their fiduciary duty to Merrill Lynch, and unfair competition.

27.    Unless Defendants' conduct is immediately enjoined, other competitors of Merrill Lynch will be encouraged to allow their employees to engage in the same illegal activity, which will cause severe and permanent damage to Merrill Lynch.

28.    Defendants' conduct has caused, and will continue to cause, irreparable harm to Merrill Lynch as follows:

a) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

b) Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts;

c) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

29.  Unless Defendants' conduct is immediately enjoined, Merrill Lynch will continue to suffer irreparable harm and incalculable damage, including the permanent loss of its clients and a loss of client confidentiality and goodwill.

30.  I declare under penalty of perjury that the foregoing is true and correct.

Cathy Achter
Regional Business Manager

Sworn to and Subscribed
Before me this _____ day
of June, 2008.

_____
Notary Public

8

# EXHIBIT A

From: J Haj <jhaj123@gmail.com>
Date: May 22, 2008 11:02 PM
Subject: Urgent Message from Jinesh (Hodge) Brahmbhatt
To:

5/22/2008    **REDACTED**

Dear

I am pleased to announce that I have joined the firm of Jade Private Wealth Management.
My new location and phone number are as follows:

Jade Private Wealth Management
1934 Old Gallows Road #350
Vienna, VA 22182
Phone #: 301.455.1078

The individuals at Jade Private Wealth Management are affiliated with the national
independent brokerage firm, LPL Financial.

Sincerely,


Jinesh (Hodge) Brahmbhatt
Registered Representative

1

