## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER<br>& SMITH INCORPORATED, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action: _____ |
| | : | |
| JINESH BRAHMBHATT,<br>DARSHAN MAKIM | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

### EMERGENCY MOTION FOR A TEMPORARY
### RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1.     Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") respectfully moves this Court for a Temporary Restraining Order and a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

2.     Contemporaneously herewith Merrill Lynch filed a Complaint with the Court, which is incorporated herein and made a part hereof by reference.

3.     As stated in Merrill Lynch's Complaint, Defendants Jinesh Brahmbhatt ("Brahmbhatt") and Darshan Makim ("Makim") have misappropriated, and continue to misuse, Merrill Lynch's trade secret information, have violated the express provisions of their Merrill Lynch employment agreements, have breached their duty of loyalty to Merrill Lynch, have converted Merrill Lynch proprietary information and have engaged in unfair competition.

4.    For the reasons stated in Merrill Lynch's Complaint, unless Brahmbhatt and Makin are enjoined from converting Merrill Lynch's property to their own use and from soliciting Merrill Lynch's clients, Merrill Lynch will be irreparably harmed by:

a)    Disclosure of trade secrets, customer lists, and other confidential information, which are solely the property of Merrill Lynch and its clients;

b)    Loss of confidentiality of the information contained in clients' records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c)    Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

d)    Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

5.    This Court need not consider the traditional prerequisites for injunctive relief in this case, as Brahmbhatt and Makim expressly agreed to the issuance of injunctive relief pending arbitration of this matter.

6.    Nonetheless, Merrill Lynch can easily satisfy the traditional prerequisites for injunctive relief.

7.    Merrill Lynch has demonstrated a substantial likelihood of success on the merits.

8.    Merrill Lynch has no adequate remedy at law.

9.    Greater injury will be inflicted upon Merrill Lynch by the denial of a temporary injunction than would be inflicted upon Brahmbhatt and Makim by the granting of such relief.

10.    The issuance of injunctive relief will serve the public interest in the enforcement of reasonable contracts and protection of trade secret business information.

WHEREFORE, Merrill Lynch respectfully prays that this Court **ORDER** and **DECREE** that:

(1)    Brahmbhatt and Makim be immediately enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of Brahmbhatt's and/or Makim's current employer LPL Financial Corporation ("LPL") until hearing and thereafter until further Order of this Court, from doing any of the following:

a)    soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Brahmbhatt and/or Makim served or whose name became known to Brahmbhatt and/or Makim while in the employ of Merrill Lynch for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging, or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Brahmbhatt's and/or Makim's family and relatives);

b)    soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whose records or information Brahmbhatt and/or Makim used in violation of

paragraph 1, 2 and 3 of their Agreement. This specifically includes any client whom Brahmbhatt and/or Makim may have contacted by mail, phone or otherwise through the use of any information obtained by Brahmbhatt and/or Makim while in the employ of Merrill Lynch (excluding Brahmbhatt's and/or Makim's family and relatives);

c)    using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

d)    destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Brahmbhatt's and/or Makim's possession or control which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch clients whom Brahmbhatt and/or Makim served or whose names became known to Brahmbhatt and/or Makim while employed by Merrill Lynch, or which relate to any of the events alleged in the Complaint in this action; and

e)    any and all other such acts as this Court deems

appropriate for injunctive relief.

(2)     Brahmbhatt and/or Makim, and anyone acting in concert or participation with Brahmbhatt and/or Makim, specifically including Brahmbhatt's and/or Makim's counsel and any agent, employee, officer, or representative of LPL, are further ordered to return to Merrill Lynch's Washington, D.C. office any and all records, documents, and/or information pertaining to Merrill Lynch customers whether in original, copied, computerized, handwritten or any other form, and to purge any and all such information from their possession, custody, or control within 24 hours of notice to Brahmbhatt and/or Makim or their counsel of the terms of this Order, provided, however, that any information so purged shall be printed prior to purging and be returned to Merrill Lynch pursuant to this paragraph and consistent with paragraph (1)(d) above.

(3)     The Court's Order shall remain in full force and effect until such time as either an FINRA arbitration panel renders a final decision on Merrill Lynch's request for permanent injunctive relief or this Court specifically orders otherwise.

(4)     The parties be granted leave to commence discovery, including depositions, immediately in aid of preliminary injunction proceedings before the Court.

(5)     Pending a preliminary injunction hearing before this Court, and pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties be directed to proceed toward an expedited arbitration hearing on the merits before a duly appointed panel of FINRA arbitrators in accordance with Rule 13804(b) of the National Association of Securities Dealers Code of Arbitration Procedure.


In further support of Merrill Lynch's position, the attached Memorandum of Law

in Support of Motion for a Temporary Restraining Order and Preliminary Injunctive Relief is incorporated by reference herein.

Dated:  June 4, 2008                    Respectfully submitted,

                                        MURPHY & SHAFFER LLC

                                        _____
                                        Robert T. Shaffer, III
                                        (MD USDC Bar No. 04074)
                                        John J. Connolly
                                        (MD USDC Bar No. 09537 & DC Bar No. 495388)
                                        36 South Charles Street, Suite 1400
                                        Baltimore, Maryland 21201
                                        Phone:  (410) 783-7000
                                        Fax:  (410) 783-8823

Of Counsel:

Christopher S. Koller, Esquire
Beth Delaney, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
Paoli, Pennsylvania 19301
Phone: (610) 408-2000
Fax: (610) 408-9000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action: _____ |
| | : | |
| JINESH BRAHMBHATT, DARSHAN MAKIM | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MERRILL LYNCH'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

### A.    PRELIMINARY STATEMENT OF FACTS

This claim for injunctive relief arises from the breach of contract and unlawful misappropriation by Defendants Jinesh Brahmbhatt ("Brahmbhatt") and Darshan Makim ("Makim") (sometimes collectively hereinafter referred to as "Defendants") of highly confidential information pertaining to Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") accounts and/or potential accounts representing over **$72 million** in assets under Merrill Lynch management and over **$789,000** in Merrill Lynch commission revenues for the last twelve months alone, and Defendants' efforts to divert those accounts to their new employer LPL Financial Corporation ("LPL").

Brahmbhatt and Makim resigned from Merrill Lynch, without prior notice on Thursday, May 22, 2008, and immediately joined LPL, a competitor securities firm

located nearby in Vienna, Virginia. While still employed by Merrill Lynch, Defendants prepared to engage in, currently are engaged in, and in the absence of injunctive relief will continue to engage in the following acts:

(1)    copying, removing, and/or retaining confidential Merrill Lynch customer lists and customer information, including the names and addresses of Merrill Lynch accounts they serviced;

(2) copying, removing, and/or retaining confidential Merrill Lynch prospective customer lists and customer information, including the names and addresses of prospective Merrill Lynch customers and;

(3)    disclosing and producing these confidential records and information to LPL.

By their conduct, Brahmbhatt and Makim have breached the <u>express</u> <u>terms</u> of their respective employment <u>Agreements</u> they signed as a condition of their employment with Merrill Lynch and misappropriated Merrill Lynch's trade secrets. In addition, Brahmbhatt and Makim have committed the torts of conversion, breached their duty of loyalty to Merrill Lynch, and engaged in unfair competition.

Specifically, as a condition of their employment with Merrill Lynch, Brahmbhatt and Makim each signed an employment <u>Agreement</u>, which provides as follows:

> 1.    **<u>All records</u>, whether in original, duplicated, computerized, memorized, handwritten, or in any other form, <u>and all information</u> contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch.** This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this

information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside of Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditure of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, **I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.**

2.      If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, **I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity.** My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a) to transfer from Merrill Lynch to me or to my new employer, or
(b) to open a new account with me or with my new employer, or
(c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

3.      I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or

3

competitor of Merrill Lynch, violate or breach the terms of
this agreement.

(Exhibits "**A**" and "**B**" at ¶¶ 1-3)(underline in original, bold face added).

Further, in each <u>Agreement</u>, Brahmbhatt and Makim specifically agreed:

4.    **In the event that I breach any of the covenants of
paragraphs 1, 2 or 3, I agree that Merrill Lynch will be
entitled to injunctive relief.**  I recognize that Merrill
Lynch will suffer immediate and irreparable harm and that
money damages will not be adequate to compensate Merrill
Lynch or to protect and preserve the status quo.
**Therefore, I CONSENT TO THE ISSUANCE OF A
TEMPORARY RESTRAINING ORDER OR A
PRELIMINARY OR PERMANENT INJUNCTION
ordering:**

(a)    that I immediately return to Merrill Lynch
all    records,    whether    original,    duplicated,
computerized, or in any other form whatsoever, and
that I be enjoined and restrained from using all such
records;

(b)    that, for a period of one year, I be enjoined
and restrained from soliciting any Account whom I
served or whose name became known to me while
employed by Merrill Lynch in any office and in any
capacity and;

(c)    that I be further enjoined and restrained, for
a period of one year, from accepting business from
any Accounts who was solicited in violation of
paragraph 2 or whose records and information was
used in violation of paragraph 1;

(Exhibits "**A**"-"**B**" to Merrill Lynch's Complaint at ¶ 4)(capitalization in original,

boldface added).

Moreover, as a condition of their employment with Merrill Lynch, Brahmbhatt

and Makim agreed to safeguard the confidentiality of Merrill Lynch's customer and

account information by executing, on a continuing and annual basis, Merrill Lynch's

4

Compliance Outline For Private Client Financial Advisors, which provides:

> **Merrill Lynch policy requires the protection of client information.    All employees,** consultants and vendors **must**:
>
> - Be aware of the Merrill Lynch client information that their business handles, and ensure that its use is appropriately restricted.  This includes:
>
> - Authenticating    individuals    prior    to discussing any client matters.
>
> - Providing access to client information solely on a need-to-know basis.
>
> - Granting non-Merrill Lynch access to client information only upon a client's authorization or when permitted or required by law, and when necessary, pursuant to a written agreement that contains appropriate privacy and confidentiality provisions.
>
> - **Use    client    information    solely    for legitimate    Merrill    Lynch    business    purposes    and consistent    with    the    policies,    procedures,    client preferences and agreements which govern its use.**
>
> - Secure client information as it is collected, used, stored, shared, transferred, and discarded.
>
> - Report any breach or compromise of client information.  All employees, consultants and vendors must handle individual client personal information in accordance with the Merrill Lynch Global Privacy Pledge and the Online Privacy Statement.

See Compliance Outline attestation for Brahmbhatt and Makim, attached hereto as Exhibits "**C**" and "**D**," respectively, and pertinent parts of the Compliance Outline which are attached hereto as Exhibit "**E**" (emphasis added).

Rule 13804 of the National Association of Securities Dealers Code of Arbitration Procedure ("NASD Code") used by the Financial Industry Regulatory Authority

("FINRA") requires that temporary injunctive relief in cases involving brokerage firms and their former brokers may only be sought in a court of competent jurisdiction. Rule 13804 states:

>   (a)    Temporary Injunctive Orders
>
>       (1)    In industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction.

See NASD Rule 13804(a)(1).[1] Rule 13804 codifies what courts throughout the country have historically held, namely that temporary injunctive relief from court is necessary to "freeze the status quo" thereby preserving the meaningfulness of the arbitration. See Morgan Stanley DW Inc. v. Rothe, 150 F. Supp. 2d 67 (D.D.C. 2001); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1053-1054 (4th Cir. 1985) (holding that where a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties dispute if the enjoined conduct would render that process a "hollow formality." The arbitration process would be a hollow formality where "the arbitral award when rendered could not return the parties substantially to the status quo ante."). Moreover, Brahmbhatt and Makim also expressly agreed to the issuance of injunctive relief to preserve the status quo pending arbitration. (See Complaint, Exhibits "A"–"B" at ¶ 4).

In consideration of the above agreements by Brahmbhatt and Makim, Merrill Lynch agreed to, and in fact did provide Defendants with abundant benefits and

---

[1] The instant dispute between Merrill Lynch, and Brahmbhatt and Makim must be arbitrated before a FINRA panel of arbitrators, as it is a dispute between a FINRA Member and Associated Persons. See NASD Rule 13200(a). The term Associated Person means a person formerly associated with a member, such as Brahmbhatt and Makim. NASD Rule 13100(a), (r).

advantages such as compensating them, and providing them with Merrill Lynch operational and sales systems, research and development, advanced computer technology and systems, sales assistants, staff and support, management and compliance supervision, advanced seminars and development, securities registration, Merrill Lynch's reputation and goodwill, product inventory, marketing reporting services, access to Merrill Lynch's experts in tax, insurance, estate planning, retirement and asset management and many other sales advantages and resources. Merrill Lynch also provided Brahmbhatt and Makim with Merrill Lynch customers, as well as other customer leads and sales advantages resulting from Merrill Lynch's goodwill, reputation, and name recognition in the securities industry.

**B.    MERRILL LYNCH IS ENTITLED TO INJUNCTIVE RELIEF**

Federal and state courts throughout the country have granted Merrill Lynch and other securities firms injunctive relief under similar circumstances, including decisions by several United States Circuit Courts throughout the country and by District of Columbia courts. See, e.g., Merrill Lynch v. Radulovic, E.D. Va. No. 04-CV-1329 (November 4, 2004) (interpreting identical contractual language) (Exhibit "**A**"); Merrill Lynch v. Gerczak, E.D. Va. No. 3:04-CV-642 (September 13, 2004) (Exhibit "**B**"); Merrill Lynch v. Pardee, Va. Cir. Ct. No. 05-1749 (June 20, 2005) (Exhibit "**C**"); Merrill Lynch v. Wertz, et al., 298 F. Supp.2d 27 (D.D.C. 2002); Rothe, 150 F. Supp.2d 67; Merrill Lynch v. Schultz, 2001 U.S. Dist. LEXIS 26194 (D.D.C. 2001) (finding that although defendant merely called his former clients to "announce" his resignation, "his initiation of targeted contact through the use of client information gained through his employment with Merrill Lynch constitutes prohibited solicitation."); Bradley, 756 F.2d

1048; Merrill Lynch v. Salvano, 999 F.2d 211 (7th Cir. 1993); Merrill Lynch v. Hegarty, 808 F. Supp. 1555 (S.D. Fla.), aff'd, 2 F.3d 405 (11th Cir. 1993); Ruscitto v. Merrill Lynch, 777 F. Supp. 1349 (N.D. Tex. 1991) aff'd, 948 F.2d 1286 (5th Cir. 1991), cert. denied, 112 S.Ct. 1994 (1992); Merrill Lynch v. Dutton, 844 F.2d 726 (10th Cir. 1988).

Pursuant to the United States Court of Appeals' holding in Peabody Coalsales v. Tampa Electric, 36 F.3d 46, 48 (8th Cir. 1994), the Court need not even consider the traditional prerequisites for injunctive relief in this case. Specifically, the Peabody Court held that where, as here, a party has consented to continued performance of contractual duties pending a decision on the merits in arbitration, the district court must give effect to this term of the contract as a substantive term of the parties' agreement to arbitrate. Id.

Indeed, this Court has noted that Merrill Lynch's employment agreements, like the ones at issue here, expressly provide for a preliminary injunction pending arbitration, indicating that it recognizes the validity of such language. Wertz, 298 F. Supp.2d at 33; Rothe, 150 F. Supp.2d at 76.

Based on the undisputed facts that Brahmbhatt and Makim have retained confidential Merrill Lynch customer lists, customer information, prospective client lists and information, there is ample evidence for this Court to conclude that Defendants have and/or are about to breach their employment agreement. Based on the foregoing alone, the Court should give effect to the terms of the parties' agreement and enter a temporary restraining order as set forth in the proposed order.

Moreover, just as in the cases cited above, Merrill Lynch can easily satisfy the traditional prerequisites for injunctive relief in this case because Merrill Lynch has demonstrated: (i) a substantial likelihood of success on the merits; (ii) a substantial threat

of immediate and irreparable harm which cannot be compensated by damages; (iii) that greater injury will result from denial of the injunction than from its being granted; and (iv) that an injunction will not disserve the public interest. Wertz, 298 F. Supp.2d at 30-31; Rothe, 150 F. Supp. 2d at 72; Davenport v. International Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999); see also World Duty Free Americas, Inc. v. Summers, 94 F. Supp. 61, 64 (D.D.C. 2000). The need for immediate relief is critical. As this Court has noted previously, under very similar circumstances, **immediate** injunctive relief is necessary to avoid irreparable harm to Merrill Lynch and to maintain the status quo. Wertz, 298 F. Supp.2d 27 (D.D.C. 2002); Rothe, 150 F. Supp. 2d 67; see also FMC Corp. v. Varco, Inc., 677 F.2d 500, 504 (5th Cir. 1982) (emphasizing that absent immediate injunctive relief an employer's trade secrets "could be lost before a full trial on the merits could be held").

1.      **Likelihood of Success on the Merits**

Merrill Lynch is entitled to relief both to enforce the clear and reasonable terms of Brahmbhatt's and Makim's respective agreements, and to protect against further misappropriation and misuse of Merrill Lynch's trade secret customer lists and proprietary information.

a.      **Defendants' Agreements Are Wholly Enforceable Under District of Columbia Law**

Merrill Lynch's right to relief is clearly set forth in the express language of Defendants' employment agreements, which contain their written promise not to use or disclose Merrill Lynch's confidential customer information, including customer prospects, and not to solicit Merrill Lynch's customers. The restrictions in Defendants' agreements are virtually the same contractual restrictions upheld by this Court in Wertz,

298 F. Supp.2d 27; <u>Rothe</u>, 150 F. Supp. 2d 67; by the Fourth Circuit in <u>Bradley</u>, 756 F.2d 1048, by the Fifth Circuit in <u>Ruscitto</u>, 777 F. Supp. 1349, by the Tenth Circuit in <u>Dutton</u>, 844 F.2d 726, by the Eleventh Circuit in <u>Hegarty</u>, 2 F.3d 405, by the Seventh Circuit in <u>Salvano</u>, 999 F.2d 211, and by other Federal and state courts.

Brahmbhatt's and Makim's employment agreements are narrowly limited in duration to one year and in scope to only those Merrill Lynch customers whose accounts they serviced, or whose names became known to them, during their employment with Merrill Lynch. <u>See</u> Exhibit "**A**"-"**B**" to Merrill Lynch's Complaint at ¶ 2.

The provisions in Brahmbhatt's and Makim's agreements are not restrictive or improperly overbroad. This Court has previously upheld a preliminary injunction where a contract contained similar language which was narrowly tailored only to prevent the defendant's misappropriation of plaintiff's trade secrets and did not prevent plaintiff from engaging in business. <u>Wertz</u>, 298 F. Supp.2d 27; <u>Rothe</u>, 150 F. Supp. 2d 67. Merrill Lynch does not seek to prevent Defendants from earning a living as "stockbrokers" even though they will be doing so with a competitor company in neighboring locale. <u>Wertz</u>, 298 F. Supp.2d at 34-35; <u>Rothe</u>, 150 F. Supp. 2d at 78 (finding that: (1) the Agreement only called for a "modest one-year restriction; (2) that "nothing in the record suggests that the defendant's right to earn a living is substantially put at risk;" that plaintiff was not trying to "prevent Defendant from earning his living as a stockbroker, even though he will be doing so with a rival area company;" and that (3) defendant is free to develop new clients from the same client pool that the plaintiff taps into for business.).

**b.    Defendants' Conduct Violates The District of Columbia Uniform Trade Secrets Act**

Even in the absence of the agreements signed by Defendants, injunctive relief is appropriate to protect Merrill Lynch's trade secret customer information. The District of Columbia has adopted the Uniform Trade Secrets Act, which specifically provides for injunctive relief to prevent the misappropriation of a trade secret. See D.C. Code Ann. § 36-402. The Act defines a trade secret to include:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> > (a)    Derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and
> >
> > (b)    Is the subject of reasonable efforts to maintain its secrecy.

D.C. Code §36-401.

Applying the District of Columbia Trade Secrets Act, it is clear that Merrill Lynch's customer lists, customer information and customer prospects are entitled to trade secret protection by way of injunctive relief.

This is consistent with previous rulings from this Court and with rulings from courts throughout the country who have applied the Uniform Trade Secrets Act and analogous Restatement standards and repeatedly upheld Merrill Lynch's and other securities firms' customer information trade secret status. Wertz, 298 F. Supp.2d 27; Rothe, 150 F. Supp. 2d at 76 (finding that **customer lists of a financial-services firm deserve trade secret status under the D.C. Code**) (emphasis added); Merrill Lynch v. Dunn, 191 F.Supp.2d 1346 (M.D. Fla. 2002); Merrill Lynch v. Ran, 67 F.Supp.2d 764

(E.D. Mich. 1999); <u>Merrill Lynch v. Cross</u>, 1998 WL 122780 at *2 (N.D. Ill. 1998) ("[c]ustomer lists are entitled to trade secret protection under Illinois law."); <u>IDS Life Insurance Co. v. Sun America</u>, 958 F. Supp. 1258, 1279-80 (N.D. Ill. 1997) ("[i]n this case, plaintiffs claim that defendants are in possession of plaintiffs' records of customer names, addresses, and investment characteristics and are using that information to solicit and serve plaintiffs' customers. We find that plaintiffs' customer lists and files are likely to constitute trade secrets."), <u>aff'd in part, vac. in part</u>, 136 F.3d 537 (7th Cir. 1998); <u>IDS Financial Servs. v. Smithson</u>, 843 F. Supp. 415, 418 (N.D. Ill. 1994) ("[a]n injunction is therefore appropriate to protect IDS' proprietary interest in these secrets and to prevent the secrets from being disclosed to competitors or unjustly used by Smithson for his own benefit."); <u>Merrill Lynch v. Orbach</u>, 1994 WL 900431 (E.D. Mich. 1994) (applying Restatement law and holding that Merrill Lynch's customer list is a trade secret); <u>Hegarty</u>, 808 F. Supp. at 1558 ("[a]ccordingly, Plaintiff has a legitimate interest in the [customer] list because it is a trade secret"); <u>Merrill Lynch v. Kramer</u>, 816 F. Supp. 1242, 1246 (N.D. Ohio 1992) ("[e]ven absent a specific contractual provision, Merrill Lynch's customer list is entitled to trade secret protection under Ohio law."); <u>Ruscitto</u>, 777 F. Supp. at 1354 (emphasizing that injunctive relief is necessary to protect the "goodwill and trade secrets" of Merrill Lynch).

The economic value of Merrill Lynch's trade secret customer information confiscated by Brahmbhatt and Makim is significant: it represents dozens of Merrill Lynch accounts, over **$72 million** in assets under Merrill Lynch management and over **$789,000** in commission revenues for Merrill Lynch for the last twelve months alone. In addition, Merrill Lynch has instituted strict security procedures to maintain the secrecy of

its trade secret customer information. As a condition of their employment, Brahmbhatt and Makim each signed an Agreement in which they acknowledged that the customer information is the confidential information of Merrill Lynch. See Exhibits "**A**" through "**E**" to Merrill Lynch's Complaint. Consequently, Merrill Lynch is entitled to injunctive relief to protect the confidentiality of its customer information.

Moreover, Merrill Lynch clearly is entitled to injunctive relief both to enforce the terms of the express agreement Defendants signed and to protect against the conversion and misappropriation of its trade secret customer list and confidential customer information.

## 2.    No Adequate Remedy at Law.

The District of Columbia Uniform Trade Secrets Act specifically provides for the issuance of injunctive relief to protect against misuse of trade secrets, stating that "**actual or threatened** misappropriation may be enjoined." D.C. Code § 36-402 (emphasis added). Moreover, even absent this express statutory authorization, it is clear that Merrill Lynch lacks an adequate remedy at law and will suffer irreparable harm on multiple levels unless an injunction is granted.

First, absent immediate injunctive relief it will be impossible to determine Merrill Lynch's damages with any reasonable degree of certainty. In Wertz this Court reached the same conclusion expressly holding that Merrill Lynch faced "irreparable non-compensable harm in the loss of its customers." Wertz, 298 F.Supp. 2d at 34; Bradley, 756 F.2d at 1055; See also Salvano, 999 F.2d at 215 ("[T]he available evidence -- indicating that [former employees] took various documents and information pertaining to Merrill Lynch's clients and used that information to solicit Merrill Lynch customers --

sufficiently supports the court's determination regarding irreparable harm and the inadequacy of Merrill Lynch's legal remedy.").

While in the employ of Merrill Lynch, Brahmbhatt and Makim serviced dozens of Merrill Lynch accounts, representing over **$72 million** in assets under Merrill Lynch management which generated over **$789,000** in commission revenues for Merrill Lynch in the last twelve months alone. It is impossible to determine at this time the number of Merrill Lynch clients who will be "pirated away" by Defendants. Nor is it possible to determine with any degree of certainty the commissions each of these Merrill Lynch clients will generate not only this year, but 5, 10 or 20 years into the future. See Rothe, 150 F. Supp. 2d at 77. It is also impossible to determine the value of future referrals that will be lost from these clients. Accordingly, Defendants' breach of their agreements and misappropriation of Merrill Lynch's trade secrets involves financial loss to Merrill Lynch that is incapable of measurement, requiring the issuance of an injunction to protect Merrill Lynch from irreparable harm.

Second, irreparable harm also lies in the fact that Merrill Lynch clients expect their financial information, their market transactions, and their investment assets to be known only to themselves, Merrill Lynch, and Merrill Lynch employees. If Brahmbhatt and Heath are permitted to continue their misconduct, each clients' sensitive financial information will lose its confidentiality. In fact, this Court has previously determined that when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied. Wertz, 298 F. Supp.2d 27; Rothe, 150 F. Supp. 2d 67. As in Wertz and Rothe, injunctive relief is necessary in this case to protect the confidentiality of Merrill Lynch's

customer information and records.

Third, injunctive relief also is necessary to protect the stability of Merrill Lynch's Washington, D.C. office and to discourage competitor firms, such as LPL, from paying significant monetary incentives to induce Merrill Lynch's employees to divert Merrill Lynch's trade secret client lists to a competitor. For example, in <u>Merrill Lynch v. Patinkin</u>, the court specifically considered this risk and concluded that denying injunctive relief "would leave Merrill Lynch vulnerable to the same conduct from other employees." 1991 WL 83163 (N.D. Ill. 1991). The court further held, "the potential harm plaintiff faces, on several levels, is enormous." <u>Id</u>.; <u>see also Kramer</u>, 816 F. Supp 1242 ("[P]laintiff argues convincingly that injunctive relief is required to protect it from similar conduct by other employees and to discourage competitor firms . . . from paying such employees large sums of money to induce them to breach their contracts, to confiscate confidential client records and to divert those clients to the competitor.").

Merrill Lynch faces significant irreparable harm on numerous levels, including the infliction of incalculable damages, the loss of client confidentiality, and the threat to office stability, all of which necessitates the issuance of injunctive relief.

**3.    <u>Return to Status Quo</u>**

Merrill Lynch seeks to return to the <u>status quo</u> to the extent Brahmbhatt and Makim shall be required to return all confidential data and proprietary information they wrongfully diverted from Merrill Lynch. A return to the <u>status quo</u> further requires that Brahmbhatt and Makim be enjoined from soliciting Merrill Lynch's customers and misappropriating its customer prospects.

Second, even in the absence of such an express agreement, Defendants should be prohibited from violating the first principle of equity -- that one should not "profit from

his own wrongdoing." This equitable maxim was incorporated by the District of Columbia Legislature into the District of Columbia Uniform Trade Secrets Act, which specifically provides injunctive relief designed "to eliminate commercial advantage that otherwise would be derived from the misappropriation" of trade secrets. D.C. Code § 36-402.

**4.    Granting Injunctive Relief Outweighs Denial and Serves the Public Interest**

The benefit of injunctive relief to Merrill Lynch far outweighs any detriment to Brahmbhatt and/or Makim and will serve the public interest. An injunction will promote the public interest in the enforcement of reasonable contracts. Wertz, 298 F. Supp.2d at 34-35 ("public interest is served by protecting confidential business information and trade secrets, and enforcing valid contractual provisions, to which parties have voluntarily entered"); Rothe, 150 F. Supp. 2d at 79; See Johanneman v. Merrill Lynch, 1993 WL 835533 (E.D. Ky. 1993) ("[t]he court is of the opinion that it would be in the public interest to enforce the reasonable term of employment contracts."); Kramer, 816 F. Supp. at 1248 ("[t]o deny injunctive relief in this case would. . . jeopardize the integrity of the securities industry to the detriment of the public interest [and]. . . would cast doubt on the integrity of contractual agreements."). Most importantly, an injunction will promote the public interest in the protection of a business' goodwill and trade secrets. Rothe, 150 F. Supp. 2d at 79 ("the public has an interest in preventing unfair competition, commercial piracy, misleading solicitations, and in safeguarding the confidentiality of financial records.").

Indeed, the U.S. Supreme Court explicitly recognized the importance of protecting trade secret customer information. In Kewanee Oil Co. v. Bicron Corp., the

Supreme Court emphasized the negative costs to society resulting from the conversion of a company's valuable trade secret customer list and ruled as follows:

> The necessity of good faith and honest, fair dealing is the very life and spirit of the commercial world. **It is hard to see how the public would be benefited by disclosure of customer lists** . . .
>
> In addition to the increased costs for protection from burglary, wiretapping, bribery, and other means used to misappropriate trade secrets, **there is the inevitable cost to the basic decency of society when one firm steals from another**. A most fundamental human right, that of privacy, is threatened when industrial espionage is condoned or is made profitable; the state interest in denying profit to such illegal ventures is unchallengeable.

416 U.S. 470 (1974) (emphasis added).

Defendants, by contrast, intentionally breached their contractual commitments and deliberately and surreptitiously misappropriated Merrill Lynch's trade secret property. Brahmbhatt and Makim have no equities on their side. In addition, Brahmbhatt and Makim will not be prevented from earning a living and need only comply with their contractual and trade secret obligations to Merrill Lynch. In this case, as in all of the cases cited above, Merrill Lynch seeks only to require Defendants to honor the terms of their agreements they freely executed and to enjoin Brahmbhatt's and Makim's piracy of Merrill Lynch's most precious business asset -- its clients.

## C.   CONCLUSION

For the reasons stated above, Merrill Lynch has shown a likelihood of success on the merits of its claims, that it will suffer irreparable harm, that it is without an adequate remedy at law, that the balance of equities tilts in its favor, and that an injunction would serve the public interest. Accordingly, Merrill Lynch respectfully requests that the Court

issue a temporary restraining order and preliminary injunction to maintain the status quo

pending an expedited arbitration hearing on the merits before a duly appointed FINRA

panel of arbitrators in accordance with Rule 13804(b) of the NASD Code of Arbitration

Procedure.

Dated:  June 4, 2008                          Respectfully submitted,


                                              MURPHY & SHAFFER LLC


                                              _____
                                              Robert T. Shaffer, III
                                              (MD USDC Bar No. 04074)
                                              John J. Connolly
                                              (MD USDC Bar No. 09537 & DC Bar No. 495388)
                                              36 South Charles Street, Suite 1400
                                              Baltimore, Maryland 21201
                                              Phone:  (410) 783-7000
                                              Fax:  (410) 783-8823

Of Counsel:

Christopher S. Koller, Esquire
Beth Delaney, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
Paoli, Pennsylvania 19301
Phone: (610) 408-2000
Fax: (610) 408-9000

# EXHIBIT B



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED,

                Plaintiff,

        v.

GREGORY D. GERCZAK,

                Defendant.

Civil Action No. 3:04CV642

## ORDER

Upon review of the parties' written submissions and all attachments thereto and upon hearing oral argument of the parties on September 10, 2004, the Court applied the Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193-96 (4th Cir. 1977) test and ruled as follows:

1.     The Plaintiff has raised serious questions on the merits;

2.     the likelihood of irreparable harm to Plaintiff outweighs the harm to Defendant if the injunction is not granted; and,

3.     Public policy is favored by the entry of injunctive relief.

IT IS HEREBY ORDERED AND DECREED THAT:

1.     Pursuant to Federal Rule of Civil Procedure 65, the Court hereby enters a Preliminary Injunction which shall remain effective until a duly convened panel of National Association of Securities Dealers ("NASD") arbitrators rules on Merrill Lynch's injunction request;



10



2.    Defendant is enjoined and restrained from directly or indirectly using or exploiting any Merrill Lynch customer information that may be in his possession and from soliciting any Merrill Lynch customer that he serviced while employed by Merrill Lynch, with the exception of family and relatives;

3.    Plaintiff is permitted access to Defendant's laptop computer for the purpose of removing all Merrill Lynch proprietary business information from the laptop computer;

4.    Defendant is prohibited from altering or deleting any information from his laptop computer until further notice of this Court or until such a time agreed upon by the parties;

5.    Plaintiff is to enter a Bond of $10,000.00;

6.    The Court reserves the right to change or modify this Order based upon its review of the parties' further written submissions in this case which shall be submitted to the Court no later than Wednesday, September 15, 2004.

SO ORDERED.

13 day of September, 2004 at 4:45 o'clock p. m.

BY THE COURT:

_____

United States District Judge

- 2 -

We ask for this:

*Robert A. Peay*

Stephen E. Baril (VSB #19604)
Robert A. Peay (VSB #48649)
WILLIAMS, MULLEN, CLARK & DOBBINS, P.C.
Two James Center
1021 East Cary Street
P.O. Box 1320
Richmond, Virginia 23218-1320
804/643-1991; fax 804/783-6507
        Attorneys for Plaintiff Merrill Lynch,
        Pierce, Fenner & Smith Inc.


Of Counsel:

David F. McComb, Esquire
RUBIN & ASSOCIATES, P.C.
MCS Building
10 South Leopard Road, Suite 202
Paoli, PA  19301
610/408-2021; fax 610/408-9070


SEEN AND OBJECTED TO FOR THE REASONS STATED
IN DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENCY
MOTION AND DURING THE ORAL HEARING ON THE SAME BEFORE
THE COURT ON SEPTEMBER 10, 2004

*Timothy C. Tozer*

Timothy C. Tozer (VSB # 47483)
OBER, KALER, GRIMES & SHRIVER
1401 H Street, N.W.
Suite 500
Washington, D.C. 2005
(202) 326-5020
(202) 336-5220 (FAX)
        Attorney for Gregory D. Gerczak

- 3 -

# EXHIBIT C

VIRGINIA:    IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

MERRILL LYNCH, PIERCE, FENNER
     & SMITH INCORPORATED,

     **Plaintiff,**

v.                                 Chancery No.: 05-1749

WILLIAM M. PARDEE, JR.,

     **Defendant.**

## ORDER

AND NOW, this 20th of June, 2005, upon consideration of the Complaint and Motion of Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), and the submissions of record, and having determined that:

     1.     Under Rule 10335 of the National Association of Securities Dealers Code of Arbitration Procedure, Merrill Lynch has the express right to seek temporary injunctive relief from a court of competent jurisdiction pending an arbitration hearing before a panel of duly-appointed arbitrators.

IT IS HEREBY ORDERED AND DECREED THAT:

     (1)     The parties agree and stipulate that a Temporary Restraining Order be issued this 20th day of June, 2005.

     (2)     Pardee be immediately enjoined and restrained, directly and indirectly, whether alone or in concert with others, including any officer, agent, employee, and/or representative of Wachovia, until hearing and thereafter until further Order of this Court, from doing any of the following:

          a)     soliciting or otherwise initiating any further contact or communication

**EXHIBIT**

C

tabbies

with any client of Merrill Lynch whom Pardee served or whose name became known to Pardee while in the employ of Merrill Lynch for the purpose of advising said clients of his new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Pardee's family and relatives, and any client serviced by Pardee as a registered representative prior to joining Merrill Lynch) excepting that nothing in this Decree shall be interpreted to prohibit Pardee from accepting communications from any client, whether by mail, phone, email, or otherwise, or returning a call, letter or message from any client, so long as Pardee does not directly or indirectly make the initial contact or solicit the client or contact them, but merely responds to the client's communications;

b)    using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

c)    destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Pardee's possession or control which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch clients whom Pardee served or whose names became known to Pardee while employed by Merrill Lynch, or which relate to any of the events alleged in

2

the Complaint in this action;

(3)     Pardee, and anyone acting in concert or participation with Pardee, specifically including any agent, employee, officer or representative of Wachovia; are further ordered to return to Merrill Lynch's Norfolk, Virginia office any and all records, documents and/or other types of information pertaining to Merrill Lynch customers ("Customer Information"), whether in original, copied, handwritten, computerized (including computer software, disks, computer hard drive and/or any other type of computer or digital information storage device) or memorialized in any other form, within twenty-four (24) hours of notice to Pardee or his counsel of the terms of this Order;

(4)     Any and all Customer Information within the possession, custody or control of Pardee that is contained in any computerized form, including on computer software, disks, computer hard drive, and/or any other type of computer or digital information storage device, returned pursuant to paragraph 3 above shall be permanently deleted by a Merrill Lynch representative.  Such Customer Information shall be permanently deleted, if possible without affecting any other information or software on the computer.  Pardee, and anyone acting in concert with Pardee, is precluded from reconstituting or in any way restoring any Customer Information deleted pursuant to this paragraph and returned to Merrill Lynch pursuant to paragraph 3 above; the computer already having been provided to Merrill Lynch, shall be expeditiously returned by Merrill Lynch to Pardee.

(5)     The Court's Order remain in full force and effect until such time as either an NASD arbitration panel renders a final decision on Merrill Lynch's request for permanent injunctive relief or this Court specifically orders otherwise;

3

(6)    Pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties be directed to proceed expeditiously with an arbitration pursuant to Rule 10335(b) of the National Association of Securities Dealers Code of Arbitration Procedure; and proceedings in this matter are hereby stayed, pending the final outcome of the parties' arbitration proceeding. The parties further are Ordered to come back before this Court within 5 (five) days following a Decision by the Panel of Arbitrators on the request for permanent injunctive relief on the issue of whether this Court's temporary restraining order shall continue.

(7)    In light of the agreed nature of this injunction, no bond need be posted under Va. Code §8.01-631.

ENTER:    _06 / 20 / 05_

JUDGE:    _____
Norfolk Circuit Court

WE ASK FOR THIS:

_____
Scott W. Kezman
Beth V. McMahon
Kaufman & Canoles, PC
150 W. Main Street
Norfolk, VA 23510
(757)624-3010
(747)624-3169 Facsimile

4

SEEN AND AGREED:

_____
Warren David Harless, Esq.
Henry L. Willett, III, Esq.
Christian Barton, LLP
909 E. Main Street, Suite 1200
Richmond, VA 23219
(804)697-4130
(804)697-6130 Facsimile

::ODMA\PCDOCS\DOCSNFK\989999\3

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action: _____ |
| | : | |
| JINESH BRAHMBHATT, DARSHAN MAKIM | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

     **AND NOW**, this ____ day of June 2008 at _____ a.m./p.m., upon consideration of the Complaint and Motion of Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), any responses thereto or argument of counsel, the Court having determined that:

     1.    Under Rule 13804 of the National Association of Securities Dealers Code of Arbitration Procedure used by the Financial Industry Regulatory Authority ("FINRA"), Merrill Lynch has the right to seek interim injunctive relief pending an arbitration hearing before a panel of duly appointed arbitrators. In their employment agreements with Merrill Lynch, Defendants Jinesh Brahmbhatt ("Brahmbhatt") and Darshan Makim ("Makim") (sometimes referred to collectively as "Defendants") consented to the issuance of injunctive relief requiring compliance with their post-employment restrictive covenants pending a resolution on the merits by an arbitration panel and conferred exclusive jurisdiction on the Court for the issuance of such relief.

Defendants' employment agreements contain "qualifying language" indicating the parties' contractual intent to have injunctive relief issued in court pending arbitration;

2.      Merrill Lynch also has asserted claims under the District of Columbia Uniform Trade Secrets Act, independent of its contractual claims, contending that its customer prospect list, customer list and its customer information are protectable trade secrets. See D.C. Code Ann. § 36-401. The Court agrees that the trade secret rights of Merrill Lynch with respect to its property, proprietary and confidential information, competitive interests, and employment contracts with Brahmbhatt and Makim are being and will continue to be violated by Defendants unless Defendants are restrained from any further use or possession of that material, including using that information to solicit Merrill Lynch customers;

3.      Merrill Lynch will suffer irreparable harm and loss if Brahmbhatt and Makim are permitted to convert the property of Merrill Lynch to their own personal use and benefit, and that of Defendants' new employer, LPL Financial Corporation. ("LPL"), and to use that material to solicit Merrill Lynch accounts, clients, and customers;

4.      Merrill Lynch has no adequate remedy at law;

5.      Greater injury will be inflicted upon Merrill Lynch by the denial of temporary injunctive relief than would be inflicted upon Brahmbhatt and Makim by the granting of such relief; and

6.      The issuance of injunctive relief will serve the public interest in the enforcement of reasonable contracts and the protection of trade secrets.

2

**IT IS HEREBY ORDERED AND DECREED THAT:**

1.    A Temporary Restraining Order issue immediately and that security in the amount of $_____ be posted no later than the_____ day of June, 2008;

2.    Brahmbhatt and Makim are enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of LPL, until a hearing and thereafter until further Order of this Court from:

          a)    soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Brahmbhatt and/or Makim served or whose name became known to Brahmbhatt and/or Makim while in the employ of Merrill Lynch for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging, or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Brahmbhatt's and/or Makim's family and relatives);

          b)    soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whose records or information Brahmbhatt and/or Makim used in violation of paragraphs 1, 2, and 3 of their respective employment Agreements. This specifically includes any client whom Brahmbhatt and/or Makim may have contacted by mail, phone or otherwise through the use of any information obtained by Brahmbhatt and/or Makim

3

while in the employ of Merrill Lynch (excluding Brahmbhatt's and/or Makim's family and relatives);

c)    using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

d)    destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Brahmbhatt's and/or Makim's possession or control which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch clients whom Brahmbhatt and/or Makim served or whose names became known to Brahmbhatt and/or Makim while employed by Merrill Lynch, or which relate to any of the events alleged in the Complaint in this action.

3.    Brahmbhatt and/or Makim, and anyone acting in concert or participation with Brahmbhatt and/or Makim, specifically including Brahmbhatt's and/or Makim's counsel and any agent, employee, officer or representative of LPL, are further ordered to return to Merrill Lynch's Washington, D.C. office any and all records, documents and/or information pertaining to Merrill Lynch customers whether in original, copied,

computerized, handwritten or any other form, and to purge any and all such information from their possession, custody, or control within 24 hours of notice to Brahmbhatt and/or Makim or their counsel of the terms of this Order, provided, however, that any information so purged shall be printed prior to purging and be returned to Merrill Lynch pursuant to this paragraph and consistent with paragraph (2)(d) above.

4.     The Court's Order shall remain in full force and effect until such time as either an FINRA arbitration panel renders a final decision on Merrill Lynch's request for permanent injunctive relief or this Court specifically orders otherwise.

5.     Pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are directed to proceed toward an expedited arbitration hearing on the merits before a duly appointed panel of arbitrators pursuant to Rule 13804(b) of the National Association of Securities Dealers Code of Arbitration Procedure.

BY THE COURT:

_____
U.S. District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action: _____ |
| | : | |
| JINESH BRAHMBHATT, DARSHAN MAKIM | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

      **AND NOW**, this _____ day of June 2008 at _____ a.m./p.m., upon consideration of the Complaint and Motion of Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), any responses thereto or argument of counsel, the Court having determined that:

      1.     Under Rule 13804 of the National Association of Securities Dealers Code of Arbitration Procedure used by the Financial Industry Regulatory Authority ("FINRA"), Merrill Lynch has the right to seek interim injunctive relief pending an arbitration hearing before a panel of duly appointed arbitrators. In their employment agreements with Merrill Lynch, Defendants Jinesh Brahmbhatt ("Brahmbhatt") and Darshan Makim ("Makim") (sometimes referred to collectively as "Defendants") consented to the issuance of injunctive relief requiring compliance with their post-employment restrictive covenants pending a resolution on the merits by an arbitration panel and conferred exclusive jurisdiction on the Court for the issuance of such relief.

Defendants' employment agreements contain "qualifying language" indicating the parties' contractual intent to have injunctive relief issued in court pending arbitration;

2.    Merrill Lynch also has asserted claims under the District of Columbia Uniform Trade Secrets Act, independent of its contractual claims, contending that its customer prospect list, customer list and its customer information are protectable trade secrets. See D.C. Code Ann. § 36-401. The Court agrees that the trade secret rights of Merrill Lynch with respect to its property, proprietary and confidential information, competitive interests, and employment contracts with Brahmbhatt and Makim are being and will continue to be violated by Defendants unless Defendants are restrained from any further use or possession of that material, including using that information to solicit Merrill Lynch customers;

3.    Merrill Lynch will suffer irreparable harm and loss if Brahmbhatt and Makim are permitted to convert the property of Merrill Lynch to their own personal use and benefit, and that of Defendants' new employer, LPL Financial Corporation. ("LPL"), and to use that material to solicit Merrill Lynch accounts, clients, and customers;

4.    Merrill Lynch has no adequate remedy at law;

5.    Greater injury will be inflicted upon Merrill Lynch by the denial of temporary injunctive relief than would be inflicted upon Brahmbhatt and Makim by the granting of such relief; and

6.    The issuance of injunctive relief will serve the public interest in the enforcement of reasonable contracts and the protection of trade secrets.

**IT IS HEREBY ORDERED AND DECREED THAT:**

1.    A Temporary Restraining Order issue immediately and that security in the amount of $_____ be posted no later than the_____ day of June, 2008;

2.    Brahmbhatt and Makim are enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of LPL, until a hearing and thereafter until further Order of this Court from:

   a)    soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Brahmbhatt and/or Makim served or whose name became known to Brahmbhatt and/or Makim while in the employ of Merrill Lynch for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging, or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Brahmbhatt's and/or Makim's family and relatives);

   b)    soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whose records or information Brahmbhatt and/or Makim used in violation of paragraphs 1, 2, and 3 of their respective employment Agreements. This specifically includes any client whom Brahmbhatt and/or Makim may have contacted by mail, phone or otherwise through the use of any information obtained by Brahmbhatt and/or Makim

3

while in the employ of Merrill Lynch (excluding Brahmbhatt's and/or Makim's family and relatives);

      c)     using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

      d)     destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Brahmbhatt's and/or Makim's possession or control which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch clients whom Brahmbhatt and/or Makim served or whose names became known to Brahmbhatt and/or Makim while employed by Merrill Lynch, or which relate to any of the events alleged in the Complaint in this action.

      3.     Brahmbhatt and/or Makim, and anyone acting in concert or participation with Brahmbhatt and/or Makim, specifically including Brahmbhatt's and/or Makim's counsel and any agent, employee, officer or representative of LPL, are further ordered to return to Merrill Lynch's Washington, D.C. office any and all records, documents and/or information pertaining to Merrill Lynch customers whether in original, copied,

computerized, handwritten or any other form, and to purge any and all such information from their possession, custody, or control within 24 hours of notice to Brahmbhatt and/or Makim or their counsel of the terms of this Order, provided, however, that any information so purged shall be printed prior to purging and be returned to Merrill Lynch pursuant to this paragraph and consistent with paragraph (2)(d) above.

4.    The Court's Order shall remain in full force and effect until such time as either an FINRA arbitration panel renders a final decision on Merrill Lynch's request for permanent injunctive relief or this Court specifically orders otherwise.

5.    Pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are directed to proceed toward an expedited arbitration hearing on the merits before a duly appointed panel of arbitrators pursuant to Rule 13804(b) of the National Association of Securities Dealers Code of Arbitration Procedure.

BY THE COURT:

_____

U.S. District Judge